Cesar Roberto FIERRO,
Petitioner–Appellant,

v.

James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent–Appellee.

No. 88–1507.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1989.

Bruce J. Ponder, El Paso, Tex., for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before REAVLEY, KING, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In 1980 Cesar Roberto Fierro was convicted of capital murder and sentenced to death by the state of Texas. He now appeals the federal district court's denial of his petition for writ of habeas corpus. We affirm.

## I

In 1980 Fierro was convicted in a state court in Texas of committing murder during the course of a robbery, and sentenced to death. By 1987, Fierro had exhausted all opportunities for state relief. In September 1987, he filed a petition for writ of habeas corpus in federal district court. The district court entered a judgment in June 1988, denying the petition and withdrawing its stay of execution. In July 1988, Fierro obtained a certificate of probable cause for appeal and a further stay of execution from the district court. He now appeals the denial of his petition.

## II

The facts underlying Fierro's conviction and sentence are reported in *Fierro v. Texas*, 706 S.W.2d 310, 312 (Tex.Crim.App. 1986). In brief, Cesar Roberto Fierro and Geraldo Olague hailed a taxi at 2:15 a.m. on February 27, 1979, in El Paso, Texas. The driver was Nicolas Castanon. Olague, aged sixteen, sat in front, Fierro in back. Castanon was told to take Olague to an address in El Paso, and then take Fierro across the border to Juarez, Mexico. As they neared the first destination, Fierro yelled, "Stop." As Castanon turned around, Fierro shot him in the back of the head. After the car stopped, Fierro drove, with Olague in the back seat, to Modesto Gomez Park. There, Fierro dragged Castanon's body some distance, shot him again, and took his wallet, watch, and jacket. The jacket was discarded on the road to Juarez, and the watch was discarded in a dumpster. Fierro abandoned the cab in Juarez. These facts were established primarily by Olague's testimony and Fierro's confession and are not substantially in dispute at this time.

In July 1979, Olague contacted the El Paso police and told his story. He also took two police officers to Juarez and

pointed out the residence of Fierro's mother and stepfather. They were accompanied by Juarez police officials, who later informed the El Paso officers that Fierro was in the El Paso county jail for an unrelated probation violation. The El Paso officers checked Fierro out of jail. He was warned of his rights and was told that his family had been questioned. Fierro claimed at a hearing on his motion to suppress his confession that he was told by an El Paso detective that his mother was in jail in Juarez and would not be released until Fierro signed a written confession. Fierro also testified that the detective showed him letters written by Fierro and his brother to Fierro's mother, suggesting that the detective himself had, in fact, had some contact with Fierro's mother. Fierro's parents testified that they had been arrested by the Juarez police early in the morning before Fierro gave his confession, and that they were released later that afternoon. The El Paso detectives denied Fierro's allegation, although they did admit that Fierro spoke to the Juarez police by telephone before signing his confession.

### III

Fierro challenges his conviction for murder in the course of committing a robbery. Tex.Penal Code Ann. § 19.03(a)(2) (Vernon Supp.1988). Fierro advances two arguments. First, he argues that the conviction violated his right to due process because the evidence of his guilt of this offense was insufficient. Specifically, he claims that the articles were removed after the murder, so that evidence of murder during the course of a robbery is lacking. Second, he argues that an expansive reading of this statute as encompassing his conduct violates the eighth and fourteenth amendments by expanding the class of criminals subject to the death penalty in Texas.

■ On testing the sufficiency of evidence under a petition for writ of habeas corpus, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this case, the state was obligated to prove that Fierro intentionally murdered Castanon in the course of committing or attempting to commit a robbery. Texas Penal Code Ann. § 19.03(a)(2) (Vernon 1989). A murder is committed in the course of committing or attempting to commit robbery under section 19.03(a)(2) if the murder occurs during an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the robbery. *Riles v. State,* 595 S.W.2d 858, 862 (Tex.Crim.App.1980). Even though Castanon may have been dead when Fierro removed the wallet, watch, and jacket, we have no doubt that the simple facts of this case are sufficient for the jury to infer that the killing took place during a continuous sequence of events constituting the robbery or, at least, at a time when Fierro intended and was attempting to rob Castanon. Since the evidence therefore supports the conviction under this statute, Fierro's right to due process has not been violated.

■ Similarly, the conviction and sentence under this statute do not violate the eighth amendment's prohibition on cruel and unusual punishment. The state court found that Fierro's conduct fits within the statutorily defined offense of capital murder. On a petition for writ of habeas corpus, a federal court defers to the state court's interpretation of state law. *Seaton v. Procunier,* 750 F.2d 366, 368 (5th Cir. 1985). The federal court searches only for violations of federal law. 28 U.S.C. § 2254(a); *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir.1986). Since we cannot find that the conviction under this statute was improper as a matter of state law, we have no reason to hold that the state has enlarged the class of persons subject to the death penalty. Accordingly, we find no federal constitutional violation in applying this statute to Fierro's conduct.

### IV

■ Fierro next attacks his conviction on the grounds that his confession was ob-

tained by coercion in violation of the fifth and fourteenth amendments. Fierro claims his confession was involuntary, and that he confessed only because the detectives in El Paso told him that his mother was being held by the police in Juarez, Mexico, and would not be released unless Fierro confessed.

At a hearing in the trial court, Fierro testified to this effect, and also that the detectives showed him letters that were previously in his mother's exclusive possession. Fierro's mother and stepfather testified that they had, in fact, been arrested by Juarez police early on the morning Fierro confessed, and that they were released later that day. Furthermore, detectives from El Paso had been in contact with Juarez police when the detectives were in Juarez with Olague, and the Juarez police told the detectives that Fierro was at that time in the El Paso county jail. The detectives testified, however, that they did not know that Fierro's family was in custody, and had no recollection or knowledge of any letters. They knew that the Juarez police had questioned Fierro's parents, and they allowed Fierro to speak with the Juarez police by telephone, but both detectives testified that Fierro voluntarily waived his rights and that no one coerced him to confess.

The state court, faced with this conflicting evidence, found that no threats or promises were made to Fierro with respect to members of his family, and that the Juarez police were acting neither as agents for, nor at the direction of, the El Paso police. These findings, which are subsidiary to the ultimate determination of whether the confession was voluntary, are supported by the record and so are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985). Given these subsidiary findings, we cannot conclude that Fierro's confession was coerced.

## V

### A.

Fierro next maintains that his right to due process was violated when lay witnesses were allowed to testify as to the probability that Fierro would commit criminal acts of violence in the future. The question of future violence is one of the special issues submitted to the jury in capital cases in Texas. Under Texas law, a properly qualified lay witness is permitted to state an opinion on this question. *Esquivel v. State*, 595 S.W.2d 516, 527–28 (Tex.Crim.App.1980). Fierro argues that allowing such testimony is inconsistent with other Texas evidentiary rules regarding lay opinions. Specifically, the Texas Court of Criminal Appeals has held that whenever a jury is in possession of the same information that forms the basis for the witness's opinion, and the jury is fully able to understand the matter and to draw proper inferences and conclusions from the facts, the witness's opinion is unnecessary and inadmissible. *Steve v. State*, 614 S.W. 2d 137 (Tex.Crim.App.1981). Furthermore, asking a witness whether a criminal defendant is guilty is, of course, not allowed under state law. *Boyde v. State*, 513 S.W. 2d 588 (Tex.Crim.App.1974). According to Fierro, by allowing lay opinion testimony on the ultimate issue of future dangerousness, the state sets less rigorous standards of evidence in capital cases than in any other kind of criminal case. Fierro argues that this distinction for capital cases is not rational and deprived him of a fair trial as guaranteed by the fourteenth amendment.

We reject Fierro's argument. In *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), the Supreme Court held that testimony by psychiatrists as to future dangerousness was not unconstitutional. The Court's rationale was not based on the enhanced reliability and usefulness of such testimony; to the contrary, the argument against the testimony was that it was not demonstrably reliable yet it *appeared* to be so because of the asserted expertise of the psychiatrists. *Id.* at 896– 903, 103 S.Ct. at 3396–3400. Thus, the Court found admission of the testimony constitutional despite, not because of, its characterization as expert testimony. The Court held that the psychiatrist's testimony

was not unconstitutional despite its uncertain reliability because the defense could question the reliability and the jury, presented with both sides, could decide how much to credit the testimony. *Id.* at 898–99, 103 S.Ct. at 3397–98. Here also, the defense had a full and fair opportunity to question the reliability and usefulness of the lay witnesses' opinions. The jury members then made up their own minds whether and how much to rely on that testimony. Thus, the admission of the testimony was not fundamentally unfair and did not violate Fierro's right to due process.

### B.

■ Fierro further argues that the evidence of the probability of future violence was constitutionally insufficient to impose the death penalty in his case. The right to due process requires that, for a criminal conviction, the evidence must be sufficient to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). Relying primarily on his minimal criminal history and on the mitigating testimony of his wife, mother, father, and stepfather, and a jail doctor, Fierro claims that the evidence was insufficient to support the jury finding on the special issue of future violence.

Fierro additionally argues that a verdict on this special issue may not rest exclusively on the cruelty of the act for which the sentence is being imposed, citing *Warren v. State,* 562 S.W.2d 474 (Tex.Crim.App. 1978). In *Warren,* the state court found insufficient evidence of the probability of future violence where the defendant, who shot a burglary victim, had no history of convictions for criminal violence. *Id.* at 476–77. In *Warren,* however, the court also relied on the fact that no violence had been intended, but rather that the defendant had taken the gun during the burglary and had then been surprised by the armed victim. *Id.* Thus, *Warren* relied both on the lack of prior criminal violence and on the particular facts of the crime for which the defendant was being sentenced.

As a result, the case does not stand for the proposition that a verdict as to the probability of future violence may not rest exclusively on the primary underlying act.

Nor is it clear that the Constitution prohibits such a verdict, but we need not decide that question because the state did introduce additional evidence relevant to the probability of future violence. The state showed that Fierro had been convicted of burglary of a vehicle and that his probation had been revoked, in part for possession of marijuana during a visit to his brother in county jail. Fierro's probation officer testified that Fierro had been a "poor probationer" who showed little inclination toward rehabilitation. A jail administrator testified that Fierro had been a severe disciplinary problem during his incarceration, and had to be segregated from other inmates. Two deputies testified that Fierro had threatened them with bodily injury when they disciplined him, and one of the deputies also testified to finding a knife on Fierro's bunk while searching his cell. All this evidence, taken together with the facts of the murder itself, constitutes sufficient evidence to support the jury finding that Fierro was likely to commit criminal acts of violence in the future.

### VI

■ In Fierro's final argument in this court, he maintains that the state court failed to instruct the jury during the punishment phase of the trial how to utilize mitigating evidence in deliberating upon the special issues and in answering those issues, in violation of the eighth and fourteenth amendments. It is clear that a defendant in a capital murder case is entitled to a full and fair hearing regarding punishment, including evidence of mitigating as well as aggravating circumstances. *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Fierro was allowed, of course, to introduce mitigating evidence. Under the Texas scheme, however, the jury's role is limited to answering the special issues. In Fierro's case, the jury decid-

ed only that Fierro had deliberately killed his victim and that Fierro was likely to commit criminal acts of violence in the future. Although the jury was permitted to hear all of Fierro's mitigating evidence, any of the evidence not relevant to these two special issues could logically carry no weight in the jury's deliberation and decision. Thus, according to Fierro, the jury was precluded by the sentencing scheme from applying any mitigating evidence not relevant to the two special issues. As a result, Fierro argues, to conform the sentencing procedure with the federal constitutional requirement that mitigation be considered, the court should have instructed the jury how to use Fierro's mitigating evidence.

This argument has been accepted by the Supreme Court. *See Penry v. Lynaugh,* — U.S. —, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In *Penry*, the Supreme Court held, in part, that application of the Texas capital sentencing scheme to a mentally retarded defendant was unconstitutional where the jury was not instructed that it could give effect to the defendant's mitigating evidence, including mental retardation and childhood abuse, even where that evidence was not relevant to or was relevant beyond the special jury issues. *Id.* 109 S.Ct. at 2947.

■ *Penry* does not, however, affect the resolution of the case before us because Fierro's claim was found by the state court to be procedurally barred. At trial, Fierro did not object to the jury instructions, nor did he request an instruction on mitigating evidence. Under Texas law, the failure to object to a jury instruction precludes appellate review of a claimed defect in the charge. *Williams v. State,* 622 S.W.2d 116, 120 (Tex.Crim.App.1981). In Fierro's appeal in state court, the Texas Court of Criminal Appeals found that Fierro had failed to object or request an instruction on mitigating evidence, and that "[n]othing is presented for review" as to that issue. *Fierro v. State,* 706 S.W.2d 310, 318 (Tex. Crim.App.1986). The state court then appears to have addressed the argument on the merits, rejecting it in reliance on *Jurek*

*v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (upholding constitutionality of Texas' capital sentencing scheme). *Fierro v. State,* 706 S.W.2d at 318. The Supreme Court has recently clarified the standard by which federal courts should determine "whether a state court's ambiguous invocation of a procedural default bars federal habeas review." *Harris v. Reed,* — U.S. —, 109 S.Ct. 1038, 1041, 103 L.Ed.2d 308 (1989). Under *Harris*, a procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment on the case clearly and expressly states that its judgment rests on a state procedural bar. *Id.* at —, 109 S.Ct. at 1043 (citations omitted). This rule permits state courts to rely on a procedural bar and yet address the merits of a federal claim in an alternative holding. *Id.* at —, 109 S.Ct. at 1044 n. 10. In Fierro's case, the state court clearly and expressly found "no objection or special requested charge on mitigating evidence" and that "[n]othing is presented for review." *Fierro v. State,* 706 S.W.2d at 318. Thus, "absent a showing of 'cause' and 'prejudice,'" *see Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), the state procedural bar precludes our consideration of the federal claim.

We hold that there was not good cause for not objecting. Fierro argues that good cause existed because, at the time of trial, the constitutionality of the Texas capital sentencing scheme was settled; only after the Supreme Court decided *Franklin v. Lynaugh,* — U.S. —, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), was the issue revived. In *Franklin*, Justice O'Connor suggested that the jury under the Texas capital sentencing scheme has no vehicle for applying mitigating evidence that is not relevant to the special issues or that is relevant beyond the special issues, but found it unnecessary to decide the issue because Franklin had introduced no such evidence. *Id.* at 2333 (O'Connor, J., concurring in the judgment). Justice O'Connor's concurrence in *Franklin* thus foreshadowed her opinion for the majority on this issue in *Penry*. In *Penry*, however, the

Court also held that it was not announcing a new rule on the issue of mitigating evidence, and that it was not therefore barred from applying its holding retroactively to a case on collateral review. *Penry*, at 2952; *see Teague v. Lane*, 489 U.S. ——, 109 S.Ct. 1060, 1066–67, 103 L.Ed.2d 334 (1989). Since, despite *Jurek*, the Court in *Penry* was not announcing a new rule as to the need for consideration of mitigating evidence, there was no good cause for not raising the objection at trial.

Furthermore, this precise argument against application of a procedural bar was rejected in *Selvage v. Lynaugh*, 842 F.2d 89 (5th Cir.), *stay granted*, —— U.S. ——, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988). *See also McCoy v. Lynaugh*, 874 F.2d 954, 958 (5th Cir.1989); *King v. Lynaugh*, 868 F.2d 1400, 1403 (5th Cir.1989); *Bridge v. Lynaugh*, 863 F.2d 370 (5th Cir.1989) (on rehearing). In *Selvage*, the court held that this particular issue "is not a recently found legal theory not knowable by competent trial counsel." *Selvage*, 842 F.2d at 94. If counsel in *Franklin* and *Penry* could be aware of the issue and raise it appropriately, so could counsel in *Selvage, Bridge, King, McCoy* and the instant case. *See Bridge*, 860 F.2d at 164–65 (Jones, J., dissenting on petition for rehearing and suggestion for rehearing en banc). After *Selvage* and these subsequent cases, we cannot find that Fierro's counsel had good cause not to object to the jury instructions on the grounds raised on appeal; nor does the Supreme Court's decision in *Penry*, discussed above, change our result on this issue. Accordingly, the procedural default cannot be avoided and bars Fierro's argument on appeal as to consideration of mitigating evidence under the Texas capital sentencing scheme.

### VII

None of Fierros' issues on appeal provides grounds for reversing the denial of his petition for writ of habeas corpus. His conviction for murder in the course of committing robbery was constitutional. He has not established that his confession was coerced. There was sufficient evidence of the probability of future violence, and the admission of lay opinions regarding the probability of future violence was not unconstitutional. Finally, Fierro's claim that the jury was not permitted to consider all mitigating evidence is procedurally barred. Accordingly, the denial of the petition for writ of habeas corpus is

AFFIRMED.