**Kenneth L. WILLIS, Petitioner,**

v.

**Edward COHN, et al., Respondents.**

**No. IP 88–437–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 26, 1990.

James B. Mitchell, Jr., Indianapolis, Ind., for petitioner.

David A. Nowak, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## ENTRY

McKINNEY, District Judge.

This cause comes before the Court on a petition for writ of habeas corpus and other related motions. Before discussing the numerous issues presented by this petition, the Court finds it necessary to set forth the factual and procedural background of this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action involves a petition for writ of habeas corpus filed June 14, 1988, by petitioner Kenneth L. Willis pursuant to 28 U.S.C. § 2254. Due to the length of time which has transpired since this action initially was filed, in addition to the numerous motions and rulings made since that date, the current state of the record in this cause is somewhat clouded.[1] Accordingly, the Court will review the chronological development of this case in some detail so as to clarify the record.

This action arises from Willis' arrest and conviction in connection with the March 16, 1984, armed robbery of Merchants National Bank in Speedway, Indiana. Following Willis' arrest, the state trial court appointed attorney Lawrence O. Sells to represent Willis.[2] On February 9, 1985, a jury con-

---

**1.** Willis has written many letters to various members of this Court. As of late, Willis has taken the position that the delay in resolving his case involves a concerted effort to deprive him of his constitutionally protected rights. While the Court is sympathetic to Willis' plight and the delays he has experienced, his position is untenable. The source of the delays are many, and unintended. For example, at last count this Court had more than 480 cases pending. In addition, the Court has previously noted procedural problems in Willis' habeas petition, adding to the delay. *See* Entry of August 23, 1989.

The point is simply that the Court has not sought to hinder any of Willis' constitutional rights.

**2.** The state court record in this case reveals that on April 10, 1984, The Honorable Thomas Alsip determined that Willis was eligible to receive representation by the public defender's office, and Sells was appointed to represent Willis (R. 10). However, Willis' petition for post-conviction release ("PCR"), filed in Marion Superior Court, states that Willis was represented throughout all pretrial, trial and sentencing pro-

victed Willis of robbery and conspiracy to commit robbery of Merchants National Bank. On February 27, 1985, Willis received a 40–year, executed sentence.

On April 26, 1985, attorney Sells filed a motion to correct errors, alleging six separate errors occurred during Willis' trial, including "[a]ll errors alleged in defendant's pro se motions filed as a result of his convictions herein." This motion was overruled by the trial judge on April 29, 1985.

Attorney William L. Soards was appointed by the trial court to represent Willis on direct appeal. As stated by the Indiana Supreme Court, *Willis v. State*, 510 N.E.2d 1354, 1355 (Ind.1987), Willis presented the following issues on direct appeal:

(1) sufficiency of the evidence;

(2) error in admitting State's exhibit 40 into evidence;

(3) error in giving final instructions 2, 14, and 15;

(4) error in considering the conviction records of one Kenneth Payton at the sentencing hearing; and

(5) five other errors raised in Appellant's *pro se* motion to correct errors.

The "five other errors" presented in Willis' *pro se* motion to correct errors were described on appeal as follows:

(a) suggestive lineup;

(b) testimony regarding marks on appellant's arm;

(c) threatening of defense witnesses;

(d) jury read wrong information; and

(e) confession obtained by force and intimidation.

*Id.* at 1358–59. On July 28, 1987, the Indiana Supreme Court unanimously affirmed Willis' conviction in all respects. *Id.* at 1360. Rehearing was denied, as was Willis' petition for writ of certiorari to the United States Supreme Court. 484 U.S. 1015, 108 S.Ct. 721, 98 L.Ed.2d 670 (1988).

Finding these courts unwilling to grant him relief, Willis filed this federal habeas corpus action on June 14, 1988. The State responded June 29, 1988, by filing a motion to dismiss, claiming Willis only partially

exhausted the issues raised in his habeas petition, thus requiring dismissal of the "mixed" petition per *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). On July 12, 1988, Willis filed his reply to the motion to dismiss, and on August 1, 1989, Willis filed a supplemental reply to the motion to dismiss.

Willis' habeas petition, as originally filed, presented the following four grounds for relief:

(1) the state trial court admitted into evidence statements which the police obtained from him in violation of his Fifth Amendment rights per *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

(2) the trial court admitted into evidence statements the police obtained from him through physical abuse;

(3) the trial court failed to hold a *sua sponte* hearing to determine the voluntariness of certain of his pretrial statements per *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); and

(4) the state knowingly entered into evidence a videotape of an allegedly fraudulent lineup.

Pursuant to an Entry of August 23, 1989, this Court held that Willis' challenge to the videotape is barred by procedural default, because Willis' trial counsel failed to object to the videotape's admission into evidence. Willis attempted to use ineffective assistance of counsel as cause for his procedural default. However, citing *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986), the Court held that ineffective assistance of counsel cannot be used as cause for a procedural default until the ineffective counsel claim is presented to the state court for review. Because Willis had not (nor has he yet) presented this claim to the state court for review, this Court found that the ineffective assistance of counsel claim could not be used to establish cause for Willis' procedural default.

ceedings "by retained counsel" (PCR Petition at ¶ 10).

1308

Nevertheless, the Court went on to examine whether Willis' challenge fell within the narrow "manifest injustice" exception to the cause and prejudice rule. *See Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). The Court determined that because of independent identification testimony, introduction of the videotape did not "skew the trial process" to the point that the manifest injustice exception applied to Willis' procedural default (Entry at 13–14).

Accordingly, pursuant to Willis' motion to withdraw unexhausted issues, the Court dismissed ground four from Willis' petition. The Court further found that Willis exhausted his state court remedies as to ground three. (The State did not dispute that issues one and two had been exhausted.) Therefore, the Court denied the State's motion to dismiss, and Ordered the State to file an answer addressing the remaining three grounds of Willis' petition.[3]

On October 20, 1989, the State filed the requested answer, asserting in part that Willis' habeas petition should be dismissed pursuant to the doctrine of procedural default. Attorney James B. Mitchell, appointed to represent Willis in this habeas proceeding, filed a memorandum opposing the State's answer April 3, 1990. Subsequently on April 6, 1990, the State filed its response. Willis then filed a *pro se* "Motion to Dismiss Respondent's Claim of Procedural Default" on May 8, 1990.

As a final twist to this procedural morass, in January of 1990, Willis filed a PCR petition in Marion Superior Court. In an Entry dated March 1, 1990, this Court noted that Willis' PCR petition appeared to contain issues similar to those raised in this habeas proceeding. This Court expressed to attorney Mitchell concern regarding the possible duplication of issues. In a March 19, 1990, letter to this Court, Willis stated

that he was aware of the Court's concern regarding the possible duplication of issues between the two proceedings, but stressed that scrutiny of the PCR petition would reveal that there is in fact no duplication of issues.

Attorney Richard Culley represents Willis in his PCR proceeding. According to state court records, on March 22, 1990, Culley requested a continuance of the PCR proceeding pending resolution of Willis' petition for habeas corpus. Culley confirmed this fact with this Court.

## II. DISCUSSION

Having established this factual and procedural background, the Court now turns to the issues raised in this habeas corpus proceeding. Willis' habeas petition, as amended by this Court's Entry of August 23, 1989, presents the following three grounds for relief:

(1) the state trial court admitted into evidence statements which the police obtained from him in violation of his Fifth Amendment rights per *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

(2) the trial court admitted into evidence statements the police obtained from him through physical abuse; and

(3) the trial court failed to hold a *sua sponte* hearing to determine the voluntariness of certain of his pretrial statements per *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Each of these grounds relates to certain statements made by Willis following his arrest. The record in this case reveals that an officer from the drug investigation unit of the Marion County Sheriff's Department choked Willis when Willis told the officer that the money taken in the robbery had

---

**3.** This Court's Entry of August 23, 1989, was not limited to consideration of Willis' habeas corpus petition. The Court also noted that Willis had filed several other motions. The Court held that based on the dismissal of ground four, Willis' motions for an evidentiary hearing, for discovery, for appointment of an expert, and for expansion of the record were moot. In addition, the Court stayed consideration of Willis'

motion for summary judgment and motion for bail, pending receipt of the State's answer. Since this Court's prior Order, Willis filed a second motion for expansion of record. As discussed herein, the motion for expansion is denied. Furthermore, based on today's decision in this cause, the motion for bail is denied and the motion for summary judgment is moot.

been used to buy drugs, which had been consumed. The Indiana Supreme Court made this factual finding, and in this context these facts are presumed correct. 28 U.S.C. § 2254(d); *Patton v. Yount,* 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2892 n. 12, 81 L.Ed.2d 847 (1984); *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

The State does not dispute that this choking incident occurred (*See* Respondent's Memorandum in Support of Answer at 10). Instead, the State argues that consideration of these grounds for relief is barred because of the doctrine of procedural default, because Willis failed to object at trial to the admission of these statement. As noted herein, this Court briefly discussed the doctrine of procedural default in its Entry of August 23, 1989, in relation to ground four of Willis' petition. Resolution of Willis' habeas petition thus requires this Court to revisit this area of the law.

A. *Procedural Default*

The doctrine of procedural default, much like the exhaustion doctrine first set forth in *Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), attempts to balance comity and constitutional considerations. Pursuant to this doctrine, first adopted in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a habeas petitioners' violation of state procedural rules generally prevents the petitioner from obtaining federal habeas relief.

The basis for the procedural default rule is that where an adequate and independent state ground (the procedural default itself) supports a state court judgment, any error by the state court in applying or interpreting federal law is of no consequence. The federal question is, in effect, moot because nothing turns on its resolution. *See U.S. ex rel Falconer v. Lane,* 720 F.Supp. 631, 637 (N.D.Ill.1989); *Fay v. Noia,* 372 U.S. 391, 429, 83 S.Ct. 822, 843, 9 L.Ed.2d 837 (1963).

A related rationale for the procedural default rule is that "it is not equitable for petitioners to ask the federal courts to overturn state convictions or sentences on grounds they did not give state officials a chance to refute or on the basis of errors they did not give state officials the opportunity to correct." 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 24.3 at 345 (1988).

■ A procedural default, however, does not necessarily prevent a federal court from reviewing a petitioner's habeas claim. Rather, a petitioner may overcome the sometimes harsh result of a procedural default "[i]f the petitioner can establish good cause for his default, and prejudice resulting from it." *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506.

■ A procedural default may occur either by failing to object at trial or by failing to properly raise the claim on direct review. *Falconer v. Lane,* 720 F.Supp. at 636. In the case at bar, Willis' purported procedural default involves his failure at trial to object to the admission of evidence that he now claims frustrated his right to a fair trial. To be more precise, it was the failure of Willis' *trial counsel* to object that forms the basis of the procedural default asserted here by the State.

Specifically, the State contends that because Willis failed to object to the admission of this evidence or the failure to hold a *Jackson* hearing, these claims cannot be considered absent a showing by Willis of cause and prejudice. Willis seeks to avoid the obvious problem of making such a showing [4] through application of the "plain statement" rule of *Michigan v. Long,* 463 U.S. 1032, 1042 and n. 7, 103 S.Ct. 3469, 3477 and n. 7, 77 L.Ed.2d 1201 (1983). As explained recently by the Supreme Court in *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case *clearly and expressly* states that its judgment rests on a state procedural bar" (citations omitted) (emphasis added).

---

**4.** *See infra,* part II. B.

The State argues in its brief that the Indiana Supreme Court "expressly found a waiver due to Petitioner's failure to make a contemporaneous objection," *citing Willis v. State,* 510 N.E.2d at 1359. Willis counters that the procedural default doctrine "must be rejected because there is not a clear and express statement in the Indiana Supreme Court opinion finding that to be the basis of the Court's decision."

The relevant portion of the state supreme court opinion is as follows:

> There is no indication here that Appellant's statements were the result of the attack by the unknown officer. Appellant was described as agitated, but signed a waiver of his rights and attempted to strike a deal with the police. *Further, Appellant failed to object to this testimony when offered by Officer Hawkins.* Our conclusion is that Appellant's statements were voluntary and admissible.

*Willis,* 510 N.E.2d at 1359 (emphasis added). The issue thus is whether the above-quoted language is a clear and express statement that the judgment on this point rests on a state procedural bar. *Harris,* 109 S.Ct. at 1043.

The Seventh Circuit considered this issue recently in *Rogers–Bey v. Lane,* 896 F.2d 279 (7th Cir.1990). In *Lane,* the Seventh Circuit was asked to determine whether the Illinois Court of Appeals' affirmance on direct appeal of habeas petitioner Ronald Rogers–Bey's ("Rogers") conviction was on the procedural bar of failing to make a contemporaneous objection, or on the merits. *See People v. Rogers,* 133 Ill.App.3d 1164, 99 Ill.Dec. 677, 496 N.E.2d 23 (5th Dist.1984).

The Illinois appellate court first noted that Rogers' failure to object during trial waived the issue on appeal. However, that court then went on to reject Rogers' constitutional claim on the merits by determining that any error that might have resulted was harmless beyond a reasonable doubt. Applying the Supreme Court's reasoning in *Harris,* the Seventh Circuit held "the state court did not clearly and expressly rely on

a state procedural bar." *Lane,* 896 F.2d at 281.

In making this determination for the Seventh Circuit panel, Judge Flaum wrote as follows:

> By reaching the plain error claim after having found waiver, the court necessarily relied on two different grounds for its decision. The court gave no indication whether these grounds were independent and gave no limiting language regarding its reasons for reaching both grounds. If these two grounds were merely alternative, independent grounds, consideration of both would not prevent procedural foreclosure on habeas. Under *Harris,* it is clear that where the state expressly and clearly relies on federal law only as an alternative to adequate and independent state grounds, federal courts must honor the state holding.

*Id.* at 281.

Judge Flaum went on to explain the impact of *Harris* on *Sykes,* writing, "[T]he state's reliance on the procedural foreclosure must be stated, and it must be stated in plain language." *Id.* at 282. The Seventh Circuit noted that after *Harris,* federal courts no longer second guess the state courts' conclusions. "Therefore, in the absence of any explicit language indicating Illinois' reliance on the state procedural bar as an independent ground for decision, we must conclude that Rogers' claim is not foreclosed." *Id.* On the merits, the Seventh Circuit nevertheless found habeas relief unwarranted.

Concurring in the result in *Lane,* Judge Manion wrote separately to emphasize a different understanding of the *Harris* "plain statement" rule. According to Judge Manion,

> The Supreme Court in *Harris* said that when a state court gives alternative holdings—first, invoking a procedural bar, and then going on to hold that the claim fails on the merits anyway—federal review is barred. *See* 109 S.Ct. at 1044 n. 10. That is all the court did here. It found Rogers had waived his hearsay argument, and then it found that the alleged hearsay, if error at all, was

harmless. The court did not use the words "alternative holding" to preface its plain error discussion, but it clearly stated that Rogers had waived his hearsay argument. That is enough, in my view, to constitute a "plain statement" that the court is relying on a procedural bar to decide the case.

*Lane,* 896 F.2d 284.

Decisions from other courts shed additional light on the issue of what constitutes a plain statement. In some cases, no statement from the last reviewing court has satisfied the plain statement rule, though the Circuit Courts of Appeal are split on this issue. This complication typically arises in the area of summary affirmances and the like.

For example, in *Booker v. Lynaugh,* 872 F.2d 100, 100–01 (5th Cir.1989), the court held that the state appellate court's denial of the petitioner's habeas corpus petition "without written order" does not preclude federal review. Similarly, in *Shaddy v. Clarke,* 890 F.2d 1016, 1018 (8th Cir.1989), the court held that a summary dismissal for lack of jurisdiction does not create a procedural bar to federal review. *See also Roller v. McKellar,* 711 F.Supp. 272, 276–77 (D.S.C.), *appeal dismissed,* 891 F.2d 287 (4th Cir.1989) (holding state supreme court's affirmance of conviction, without indicating whether the claim was dismissed on the merits or on procedural grounds, does not create a procedural bar); *Maxwell v. Smith,* 722 F.Supp. 7, 8 (W.D.N.Y.1989) (holding an affirmance without opinion does not create a procedural bar); *Fagon v. Bara,* 717 F.Supp. 976, 986–87 (E.D.N.Y. 1989) (same).

A contrary result was reached in *Harmon v. Barton,* 894 F.2d 1268 (11th Cir. 1990). In *Harmon,* the trial court's dismissal of the petitioner's post-conviction involuntary plea claim clearly rested on a procedural bar. The state appellate court then issued a per curiam affirmance without comment. The Eleventh Circuit concluded that federal review of the petitioner's claim was barred. *Id.* at 1273.

Judge Easterbrook of the Seventh Circuit, writing recently in *Prihoda v. McCaughtry,* 910 F.2d 1379, 1383 (7th Cir. 1990) (to be reported at 910 F.2d 1379), expressly agreed with this holding and others reaching the similar results. Judge Easterbrook also cited with approval in *Prihoda* to *Ellis v. Lynaugh,* 873 F.2d 830 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989).[5] In *Ellis,* the trial court in the state habeas corpus proceeding held that the petitioner had not properly preserved his claims for review, based on the petioner's failure to raise an argument on direct review, and the failure to object at trial. However, the trial court went on to find, in the alternative, that the petitoner's claims failed on the merits. The state appellate court affirmed without a written order. In this context the Fifth Circuit held that the petitioner's claims were procedurally barred. *Id.* at 838.

These decisions reflect that what constitutes a plain statement is not always so plain. Judge Easterbrook's opinion in *Prihoda* reflects a willingness to find the existence of a plain statement even when this statement lies beneath multiple layers of judicial opining. Judge Manion's concurrence in *Lane,* 896 F.2d at 284, takes a similar approach. Judge Flaum's opinion in *Lane* also recognizes that if two grounds for a state court decision are merely alternative, independent grounds, consideration of both would not prevent procedural foreclosure on habeas review.

These views comport with the Supreme Court's teaching in *Harris,* 109 S.Ct. 1038. In *Harris,* the Supreme Court rejected the

---

5. The third case approved of by Judge Easterbrook is *Evans v. Thompson,* 881 F.2d 117 (4th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990). In *Evans,* the state habeas court dismissed the petitioner's claim "for the reasons stated in the answer" to the habeas petition. These reasons were procedural default. The state supreme court affirmed, finding "no reversible error in the judgment complained of." The Fourth Circuit observed in a footnote, "While we think the Virginia courts did intend to hold petitioner's claim procedurally barred, we address the merits of the claim to remove any question with regard to it." *Id.* at 123 n. 2.

practice of assuming the existence of a procedural default absent express language. To this end, the Supreme Court gave the following example of what constitutes a plain statement: "relief is denied for reasons of procedural default." *Id.* at 1044–45 n. 12. This precise language, however, is by no means mandatory. The underlying theme of *Harris* is that "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Id.* at 1044 n. 10.

Two cases further illustrate this point. In *Pelmer v. White*, 877 F.2d 1518 (11th Cir.1989), the state appellate court's consideration of the habeas petitioner's claim was prefaced by stating "even assuming the claim is valid." *Id.* at 1520. The Eleventh Circuit held that habeas review therefore was barred because the appellate court intended to invoke procedural default as an independent ground for denying relief. *Id.*

In contrast, no procedural bar was found in *Bagby v. Sowders*, 894 F.2d 792 (6th Cir.1990), *cert. denied*, —— U.S. ——, 110 S.Ct. 2626, 110 L.Ed.2d 646 (1990). In *Bagby*, the state supreme court wrote that the petitioner's "other assertions of error are *either* without merit *or* not preserved for appellate review." *Id.* at 797 (emphasis added). The Sixth Circuit concluded that the state court failed to make a clear and express statement regarding procedural default. *Id.* This conclusion is clearly warranted in that the state court decision in no manner indicates whether these grounds were alternate.

■ This is the issue now presented in the case at bar, namely, whether the language used by the Indiana Supreme Court in affirming Willis' conviction clearly and expressly states that its judgment rests on a state procedural bar. As previously stated, in addition to concluding that Willis' statements were voluntary and admissible, the Indiana court wrote, "*Further*, Appellant failed to object to this testimony when offered by Officer Hawkins." *Willis*, 510 N.E.2d at 1359 (emphasis added).

In this Court's view, use of the word "further" by the Indiana Supreme Court is pivotal. Black's Law Dictionary defines "further" as follows:

Not a word of strict legal or technical import, and may be used to introduce negation or qualification of some precedent matter, but generally when used as an adverb it is word of comparison, and means "additional," and is equivalent to "moreover, or furthermore, something beyond what has been said or likewise, or also."

*Black's Law Dictionary* 608 (5th ed. 1979).

Thus, this definition supports the argument that use of the word "further" by the Indiana Supreme Court indicates that the procedural default is an independent and alternative ground supporting Willis' conviction, in addition to the determination that Willis' statements were voluntary and admissible. However, *Black's Law Dictionary* is hardly authoritative on such a critical point. The Court has, therefore, attempted to find cases in which the word "further" was used in the same manner as used by the Indiana Supreme Court in affirming Willis' conviction. The Court found two such cases, and in each case the court held that federal habeas review was procedurally barred.

In *Anselmo v. Sumner*, 882 F.2d 431 (9th Cir.1989), the Ninth Circuit addressed whether the state supreme court's order dismissing a habeas petitioner's appeal complied with the plain statement requirement. The state court's opinion was accompanied by a footnote that stated in relevant part: "*Further*, we have considered appellant's brief filed herein and have concluded that the arguments set forth in the brief lack merit." *Id.* at 434 (emphasis added).

The Ninth Circuit concluded that this language meant that the state court had "reached the merits" of the petitioner's claims, but held that this fact was "not controlling." *Id.* In support of this conclusion, the court quoted *Harris v. Reed* as follows: "By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a

state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Anselmo*, 882 F.2d at 434, *citing Harris*, 109 S.Ct. at 1044 n. 10.

Even closer on point is *Fierro v. Lynaugh*, 879 F.2d 1276 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 776 *rehearing denied,* —— U.S. ——, 110 S.Ct. 2198, 109 L.Ed.2d 525 (1990). As in the case at bar, in *Fierro* "further" prefaces a discussion regarding a procedural bar. The state court in *Fierro* wrote, *"Further,* we find no objection or special requested charge on mitigating evidence. Nothing is presented *for review"* (citations omitted) (emphasis added). *Fierro v. State,* 706 S.W.2d 310, 318 (Tex.Cr. App.1986). Similarly, in Willis' case the Indiana court wrote, *"Further,* Appellant failed to object to this testimony when offered by Officer Hawkins." *Willis,* 510 N.E.2d at 1359 (emphasis added).

The Fifth Circuit reviewed the above-quoted language from the Texas state court and found that it "clearly and expressly" indicated a procedural default. *Fierro v. Lynaugh,* 879 F.2d at 1281. The Court of Appeals therefore concluded that absent a showing of cause and prejudice "the state procedural bar precludes our consideration of the federal claim." *Id.*

This Court is persuaded to reach the same result in the case at bar. Thus, the Court disagrees with Willis' assertion in his *pro se* motion that finding procedural default in this cause requires this Court to engage in "semantical gymnastics." Two observations support this decision. First, unless Willis' procedural default was a basis for upholding his conviction, the Indiana Supreme Court would have no reason to make reference this fact. More specifically, the fact that Willis did not object at trial to the admissibility of these statements is of no import except to the issue of whether a procedural default occurred.[6]

Thus, by giving one reason for its decision, and then stating "further" that a timely objection was not made, the Indiana Supreme Court merely set forth an alternative, independent ground for its decision. As the Seventh Circuit stated in *Lane,* 896 F.2d at 281, consideration of both grounds does not prevent procedural foreclosure on habeas review, and therefore federal courts must honor the state holding.

■ Second, that the Indiana Supreme Court could have made a "plainer statement" does not mean that it failed to make a "plain statement." Accordingly, the Court views the language used by the Indiana Supreme Court sufficient to satisfy the plain statement rule. While *Michigan v. Long* prevents this Court from attempting to interpret state court silence, *Prihoda,* 910 F.2d at 1383, it does not prevent this Court from giving words their obvious meaning. Therefore, absent a showing of cause and prejudice,[7] this Court is barred from reviewing Willis' habeas claims. *Sykes,* 433 U.S. at 84, 97 S.Ct. at 2505.[8]

### B. *Cause and Prejudice*

As alluded to herein, Willis faces an obvious problem in showing cause and preju-

---

**6.** The failure to object is of course relevant to the issue of ineffective assistance of counsel. However, Willis did not raise this issue on direct appeal, and as discussed herein, the exhaustion doctrine bars this Court from considering the issue.

**7.** The conclusion that absent a showing of cause and prejudice Willis' claims are barred necessarily includes a finding that Willis' claims do not fall within the narrow "manifest injustice" exception to the cause and prejudice rule. *See Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). As this Court stated in its Entry of August .23, 1989, several factors point toward Willis' guilt in this case, including independent identification testi-

mony. Therefore, the manifest injustice exception does not apply to Willis' procedural default.

**8.** Having found procedural default in this case, the Court must address Willis' argument that the State has somehow waived the right to assert the issue of procedural default. However, this argument can be dismissed with dispatch. While the State may waive its right to assert procedural default, the facts of this case do not lead down this path. The State has from the start of this action asserted procedural default as a ground for dismissing Willis' petition. *See* Memorandum in Support of Motion to Dismiss. Accordingly, the State has not waived the right to assert procedural default.

dice. The obvious problem is that of showing "cause" for the procedural default, and the interplay of the exhaustion doctrine.

■ Willis argues in relevant part that ineffective assistance of counsel is the cause for his failure to object at trial. As this Court has previously noted, ineffective assistance of counsel can excuse a procedural default in a habeas corpus action, but the exhaustion doctrine requires that the ineffective assistance of counsel claim be presented to the state court before it can be used to excuse the default. *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Having failed to first exhaust this issue in the state courts, Willis cannot argue ineffective assistance of counsel in order to show cause for his procedural default. Therefore, the cause and prejudice standard clearly cannot be met, making additional discussion on this point unnecessary.

### C. *Sua Sponte Hearing*

■ The final issue pending in this cause is whether, as Willis asserts, the trial judge was required to hold a *sua sponte* hearing to determine the voluntariness of certain of his pretrial statements per *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In this Court's view, the fact that a procedural default has occurred should not bar consideration of this issue.[9] This is because procedural default relates to the failure to make an objection, whereas Willis argues that even in the absence of

an objection the trial court should have *sua sponte* considered whether his statements were made voluntarily. Thus, application of the procedural default doctrine in this circumstance appears misplaced.[10]

The Supreme Court in *Jackson* observed that it is "axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." *Id.* at 376, 84 S.Ct. at 1780. Accordingly, the Court held that a defendant has a constitutional right "at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness...." *Id.* at 376–77, 84 S.Ct. at 1780–81.

*Jackson* did not squarely address whether the trial court is required to hold a hearing *sua sponte* even if the defendant fails to object at trial to the admissibility of the improper statements.[11] Several post-*Jackson* cases have confronted this issue head-on. As the First Circuit noted in *United States v. Soto*, 871 F.2d 200, 201–02 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 103, 107 L.Ed.2d 66 (1989), "the conventional wisdom among our sister circuits is that, absent a defendant's request for a hearing on the issue of voluntariness, or at least an objection to the admission of an incriminating statement or confession into evidence, the requirement of a hearing is waived" (*citing* cases from Fifth, Sixth, Ninth, Tenth, and D.C. Circuits).

---

**9.** Nor is the exhaustion doctrine a bar to consideration of this issue. As this Court found in its Entry of August 23, 1989, the "petitioner's discussion of a *sua sponte* hearing combined with his reference to *Jackson* in his proposed amended brief was sufficient to place the hearing issue before the state supreme court" (Entry at 17).

**10.** The State's argument that pursuant to *Wade v. Frazen*, 678 F.2d 56 (7th Cir.1982), the issue of the failure to provide a *Jackson* hearing is barred by procedural default misses the mark. In *Wade,* the Seventh Circuit did conclude that it was barred from reaching the merits of the *Jackson* issue due to a procedural default. *Id.* at 56. However, in *Wade* no argument was made that the trial court had a duty to *sua sponte* consider the issue of voluntariness. In fact, the Seventh Circuit in *Wade* remanded the case to the district court to determine whether the de-

fendant was denied effective assistance of counsel. *Id.* at 59. Obviously, the issue of whether the defendant was denied effective assistance of counsel overshadows any possibility of error by the trial judge in failing to hold a *Jackson* hearing on its own motion. Finally, the State also is incorrect in asserting that "*Jackson* states that a defendant must object to be entitled to a hearing" (Memorandum in Support of Answer at 4). As a matter of fact, in *Jackson* the Supreme Court remanded the case for a hearing on voluntariness although no specific objection on that issue was made. *Jackson,* 378 U.S. at 374, 84 S.Ct. at 1779.

**11.** As previously noted, no specific objection was made by the defendant in *Jackson* on the issue of voluntariness. *Jackson* at 374, 84 S.Ct. at 1779. *See supra,* n. 10.

The Fourth Circuit has reached the opposite conclusion. In *United States v. Inman*, 352 F.2d 954, 956 (4th Cir.1965), the court held that even in the absence of an objection, the court should, outside the jury's presence, determine whether the confession is admissible. Moreover, if the trial court is satisfied beyond a reasonable doubt of the confession's voluntariness, the court must make an explicit finding to this effect on the record. *Id. See also Mullins v. United States*, 382 F.2d 258, 261 (4th Cir.1967) (reaffirming the *Inman* procedure).

The Seventh Circuit follows a middle-ground approach. Ordinarily, the failure to object to the admission of statements based on voluntariness forecloses any contention that a separate hearing was required. However, the Seventh Circuit has recognized that certain "special" or "alerting" circumstances may exist such that the trial court is obligated to *sua sponte* conduct a voluntariness hearing. Two cases are particularly noteworthy.

In *United States v. Taylor*, 374 F.2d 753 (7th Cir.1967), the Seventh Circuit questioned whether the trial judge was permitted to presume the voluntariness and therefore the admissibility of a confession from the fact that the defense made no objection thereto. In discussing this issue, the court stated:

> Certain alerting circumstances, such as a defendant's apparent abnormal mental or physical condition, obvious ignorance, or lack of awareness—all of which may reveal a dereliction in defense counsel's failure to object to the introduction of a confession—may, under due process standards, require a trial judge to investigate the necessity of conducting a hearing notwithstanding the absence of an objection.

*Id.* at 756.

Having made this admonition in *Taylor*, the court then concluded that the circum-

stances did not warrant an independent investigation by the trial judge. In reaching this conclusion, the court noted that the defendant did not assert that his confession was inadmissible, "but only that its admissibility was never questioned by the trial judge." *Id.* Furthermore, the court emphasized that there was "no showing as to the inadequacy of trial counsel." *Id.* Under these circumstances, the court concluded that it was unwarranted to place a greater responsibility on the trial judge than upon the defendant's counsel to protect the defendant's rights. *Id.*

A similar scenario was presented in *Grieco v. United States*, 435 F.2d 677 (7th Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971). In *Grieco*, the defendant asserted for the first time in his habeas petition that the failure to give *Miranda* warnings made the voluntary nature of certain statements suspect, and therefore a preliminary hearing outside the jury's presence was required before these statements could be admitted into evidence.[12] The district court, which denied Grieco's habeas petition, found the record barren of any evidence of coercion.

The Seventh Circuit affirmed. Then–Chief Judge Swygert, writing for the court, recognized that "special circumstances" may exist that require the trial court to *sua sponte* conduct a voluntariness hearing. *Id.* at 678. However, the court held that the circumstances in *Grieco* did not warrant such a finding. *Id.* In particular, the court found that the interviews complained of were conducted in a non-custodial setting, thus making *Miranda* warnings unnecessary. In these circumstances, the petitioner's claim of involuntariness was insufficient to excuse his failure to object to the admission of the statements or to move to suppress. *Id.*

■ As this Court noted in its Entry of August 23, 1989, the issues in the case at

---

**12.** The Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not handed down until after the interviews in question took place in *Grieco*. Thus, because the *Miranda* decision is not ap-

plied retroactively, *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), Grieco was not specifically arguing that he was entitled to the *Miranda* protections.

bar are whether the circumstances were such that the state trial court should have held a voluntariness hearing, and whether such a hearing was in fact held. The State concedes that no hearing was held. Thus, the issue is whether a voluntariness hearing was required, despite the lack of an objection from Willis' trial counsel.

The Indiana Supreme Court has determined that Willis' statements were voluntary and admissible. *Willis v. State*, 510 N.E.2d at 1354. The State argues that this finding is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). This argument appears dubious since the presumption of § 2254(d) rests on a full, fair, and adequate hearing, precisely what Willis argues he did not receive. In any event, this issue need not be resolved because this Court must nevertheless make its own determination on the issue of voluntariness. *Weidner v. Thieret*, 866 F.2d 958, 961 (7th Cir.1989). In resolving this issue, this Court is directed to consider the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

This consideration requires an assessment of both the characteristics of the accused and the details of the interrogation. *Id.* Relevant factors include the following: (1) the youth, education, and intelligence of the accused; (2) the lack of any advice to the accused of his constitutional rights; (3) the length of detention and nature of the questioning; and (4) the use of physical punishment such as the deprivation of food or sleep. *Id.* (citations omitted). The Court now will apply these factors to evaluate the totality of the circumstances in the case at bar.

The record in this case [13] reflects that at the time of Willis' arrest, he was 29 years old (R. 236), had graduated from high school, and was attending college classes (R. 239). The arrest was effected April 4, 1984, pursuant to an arrest warrant, at Willis' apartment building. Approximately six to eight police officers assisted in the arrest (R. 606). According to the testimony of Detective Sgt. Robert Hawkins of the Speedway Police Department, Willis was arrested, handcuffed, and taken to the lobby of his apartment building (R. 608–09). At the time, Willis was dressed only in boxer shorts (R. 611).

In the lobby of the apartment building an unidentified narcotics officer from the Marion County Sheriff's Department "became agitated" when Willis did not respond to questioning and began choking Willis (R. 610). Asked the purpose of this conduct, Hawkins responded, "I think to intimidate him (Willis)" (R. 610). Hawkins then summoned his superior, who removed the offending officer from the scene. Hawkins said the incident was "rather short," estimated at less than one minute (R. 610.) Willis then was taken to the Marion County Sheriff's Department and interrogated. On the way to the sheriff's department, Hawkins orally advised Willis of his *Miranda* rights (R. 612).

Upon arriving at the sheriff's department, Willis again was advised of his *Miranda* rights, and Willis signed a document reflecting this fact (R. 612). This document also indicates that Willis waived his *Miranda* rights. This waiver states in relevant part, "No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. I am willing to make a statement and an-

---

**13.** Willis has filed a *pro se* motion for expansion of record, seeking all documents produced in *Willis v. Lockhart, et al.,* a civil action brought in connection with Willis' treatment by police on the night of his arrest. While the additional materials may be relevant to the issue of whether Willis' statements were coerced, the issue currently before this Court is limited to whether the trial court should have *sua sponte* held a voluntariness hearing. In making this decision, it seems appropriate for this Court to limit its focus to matters of which the trial court was made aware. The additional materials Willis points to may, however, be relevant to whether Willis received effective assistance of counsel. That is, if there were witnesses available who saw Willis beaten more seriously than indicated by the testimony presented at trial, Willis' trial counsel may have been constitutionally defective. However, as previously noted, the issue of ineffective assistance of counsel is not before this Court. Therefore, Willis' *pro se* motion for expansion of record is denied.

swer questions" (State's Ex. 24). Willis then indicated a willingness to engage in discussions with the police. However, Hawkins said Willis was "quite agitated at this point" due to the choking incident (R. 616).

During questioning by Hawkins, Willis indicated he would provide information regarding his accomplice in the robbery, Samuel Ricketts, in exchange for leniency. Specifically, Willis stated he would cooperate in exchange for immunity (R. 638–39).[14] When discussions with the prosecutor's office indicated no such immunity would be forthcoming, Willis advised Hawkins they had "nothing further to discuss" (R. 640).

This Court must now determine whether the foregoing facts presented "alerting circumstances" such that the trial court should have *sua sponte* held a voluntariness hearing. *United States v. Taylor*, 374 F.2d at 756. In making this determination, the Court considers the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. at 226, 93 S.Ct. at 2047.

Unquestionably the evidence reveals that Willis was attacked and choked by a police officer at the time of his arrest in an apparent effort to intimidate Willis. The evidence also shows that this officer was then removed from the scene. This incident clearly had some affect on Willis, for Hawkins testified that Willis appeared "agitated" after this incident. Nevertheless, the evidence also shows that Willis was advised orally and in writing of his *Miranda* rights, that Willis signed a waiver of these rights, and thereafter attempted to negotiate a plea in exchange for his testimony against his accomplice Ricketts.

Under these circumstances, this Court finds no error in the trial court's failure to conduct a voluntariness hearing. The record does not reflect any abnormal mental or physical condition, obvious ignorance, or lack of awareness on Willis' part—factors identified by the Seventh Circuit as relevant to the necessity of conducting a hearing notwithstanding the absence of an

objection. *Taylor*, 374 F.2d at 756. Nor was there the lack of any advice to the accused of his constitutional rights. *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047. On the contrary, Willis clearly understood his rights, signed a waiver thereof, and in fact attempted to strike a deal with the police.

While the choking incident obviously involved a degree of physical punishment, this was but a brief, isolated incident. While no voluntariness hearing was held, Officer Hawkins was subjected to cross examination regarding the events surrounding Willis' arrest, including the choking incident (R. 661–68). Furthermore, there is no suggestion that Willis was deprived of food or sleep. *Id.*

Examining the totality of the circumstances, no voluntariness hearing was required absent a request by defense counsel. Cases in which *sua sponte* hearings have been required typically involved egregious circumstances far more serious than those present in the case at bar. *See e.g., Hizel v. Sigler*, 430 F.2d 1398, 1401 (8th Cir.1970) (pre-*Miranda* case wherein evidence at trial indicated *inter alia* that the defendant suffered from chronic brain damage caused by alcoholism, was unable to read and write except for his last name, had a mental age of eight to 12, and was not given his *Miranda* rights). Furthermore, neither of the two Seventh Circuit cases discussed herein reciting the need to consider "alerting circumstances" found such circumstances to exist.

Based on the foregoing, this Court is in agreement with the Indiana Supreme Court's determination that Willis' statements were voluntary and admissible. The Court further finds no error in the failure to conduct a *sua sponte* hearing on the issue of voluntariness. Therefore, that portion of Willis' petition seeking relief based on the failure to conduct a hearing per *Jackson v. Denno* is DENIED.

14. In actuality, it was Ricketts who testified against Willis at trial as part of a plea agreement (R. 531–601). During Ricketts' testimony, he identified Willis as the person who committed the robbery with him (R. 535).

## III. CONCLUSION

This Court has undertaken an exacting review of Willis claims for relief, but under the circumstances finds no relief is warranted.[15] First, the Court finds consideration of Willis' claims is barred by the doctrine of procedural default, and Willis' failure to exhaust his ineffective assistance of counsel claim prevents him from using this as cause for the default. Second, the Court finds that "alerting circumstances" were not present such that the state trial court was required to *sua sponte* hold a *Jackson* hearing.

It would seem that Willis' focus at this point should be on whether he was denied effective assistance of counsel at trial. To this end, Willis' PCR petition now pending in state court asserts this as a ground for relief. With the dismissal of this habeas petition, it is presumed that Willis will proceed with his state PCR claims, with the assistance of his appointed counsel in that matter.[16] Whereas the proper resolution of Willis' state PCR proceeding is currently unknown, the same cannot be said of this habeas action. This cause is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

---

**15.** The Court also finds that no evidentiary hearing is necessary in this cause.

**16.** Distribution of this Entry will, as a courtesy, be sent to the judge handling Willis' PCR petition, and Willis' attorney in that matter. This seems appropriate in light of the previously mentioned fact that the state PCR proceeding was stayed pending resolution of Willis' habeas petition. Distribution also will be made to Willis.