Don Louie WARREN, Appellant,

v.

The STATE of Texas, Appellee.

No. 55613.

Court of Criminal Appeals of Texas, En Banc.

March 1, 1978.

Rehearing Denied March 22, 1978.

Willis T. Taylor, Daniel H. Benson, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and H. Grady Terrill, III, Asst. Dist. Atty., Lubbock, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder in which the punishment of death was assessed following the jury's affirmative answers to the special issues. See V.T.C.A., Penal Code, § 19.03(a)(2), and Article 37.071, Vernon's Ann.C.C.P.

At the outset we are confronted with appellant's contention that the evidence was insufficient to support an affirmative finding by the jury to special issue No. 2 submitted at the penalty stage of the trial, which inquired into the probability of the appellant's committing criminal acts of violence that would constitute a continuing threat to society. See Article 37.071, Vernon's Ann.C.C.P.[1]

At the guilt stage of the trial the State offered evidence showing that shortly after 7 a.m. on January 4, 1975 Bob Tucker discovered the body of his brother, Victor Wayne Tucker, the deceased, in the deceased's home at 6203 West 19th Street in Lubbock. The police were called. They found the body of the deceased with a bullet wound under the left eye, a bloodied head, lying in a back bedroom with a loaded but unfired .25 caliber pistol lying at his feet. The deceased, a service station operator, was known to carry a weapon with him. Drawers were pulled out and items were scattered about the bedroom. A locked money box was found near the deceased.

It contained cash and endorsed checks. The police found a key in the deceased's pocket which opened the box. A wristwatch, a digital clock and other items belonging to the deceased were found behind the house. A .38 caliber pistol known to have been kept by the deceased in the bedroom was found to be missing. An empty holster was found on the bed. Dr. John P. Ray, Jr., determined that the cause of death was a single gunshot wound in the face penetrating the central nervous system resulting in the destruction of the brain, skull fracture, etc.

On March 26, 1975, after receiving information from Steve Elliott, Lubbock police arrested the appellant, who shortly thereafter gave an extrajudicial confession which was introduced into evidence by the State. In his confession appellant admitted that he and one Johnny Barone had decided to burglarize the house at 6203 West 19th Street and they had gone there unarmed and broken in. While there, appellant found a pistol and put it in his coat pocket. While in a bedroom, he later heard someone enter the front door and heard talking, suggesting two persons. He then related a man walked into the bedroom, flipped on the light and started yelling at him, which scared him. The man then pulled a gun, and when he did, the appellant pulled the gun out of his coat. The confession then recites, ". . . I don't remember shooting him but I was the only one that had a gun. I was so scared that he was going to shoot that I didn't know what I was doing." Appellant then related he fled the house with Barone and that they buried the pistol in Carlisle but later recovered it and sold it.

Steve Elliott testified for the State that appellant admitted he had shot and killed the deceased. On cross-examination he related the appellant stated the deceased pulled a gun and that he (appellant) "just shut his eyes and shot."

---

1. Article 37.071(b)(2) provides:

    "(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

    "(1) * * *

    "(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

    "(3) * * *"

Mrs. Shirley Williams, a married woman, testified she had lunch with the deceased on January 3, 1975, and later went to one of deceased's service stations at closing time and followed the deceased in her car to his house about 11 p.m. The deceased arrived first, opened the house and met her at the door, and she entered the living room. The deceased then went to one of the bedrooms, and Williams heard a noise like a scuffle and then a shot, and she left immediately. She did not see what happened and did not report her presence at the scene even when she learned of the death. When first contacted by the police, she denied any knowledge of the event. She did not make a statement until the date of appellant's arrest.

Testifying in his own behalf, the twenty-five year old appellant admitted the burglary and the shooting. He reiterated that he went to the house in question, found a pistol and placed it in his coat pocket, and that he and Barone were later surprised by the deceased, who said, "You son of a bitch . . I'm going to kill you." He related that when the deceased pulled a gun the thought ran through his mind he was going to be shot and that in an act of self-preservation he pulled the pistol from his pocket and there was a loud explosion. Appellant admitted that he had been convicted of felony theft in 1971 and placed on probation, which was revoked six months later as a result of a burglary of a coin-operated machine.[2] In July, 1974 he was released from the Department of Corrections.

At the punishment phase of the trial, the State offered the pen packet as to the four year felony theft conviction from Hockley County and rested. The defense offered no evidence.

Although Article 37.071, supra, provides that at the penalty stage of a capital murder trial "evidence may be presented as to any matter the court deems relevant to sentence,"[3] the above was all the evidence

before the jury for the purpose of deciding the special issue No. 2.

Thus, to determine the question before us, we have only the evidence as to the instant offense presented at the guilt stage of trial and the pen packet offered at the penalty stage of the trial reflecting appellant's prior felony theft conviction. There was no qualified psychiatric testimony as to appellant's psychiatric makeup, which has been held to have probative value as to special issue No. 2 under Article 37.071, supra; *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976); *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr.App.1977), nor did the State offer other evidence of aggravating factors bearing on this issue such as a personal history of violence, that appellant lacked respect for human life, etc.

There was, of course, evidence of a prior four year felony theft conviction and the revocation of probation based upon burglary of a coin-operated machine. The fact that a defendant has a significant criminal record, including the range and severity of any prior criminal conduct, is certainly a factor to be considered. In the instant case, however, there was no evidence to show that any violence was connected with appellant's criminal record. In fact, in argument the district attorney admitted the absence of violence in appellant's prior criminal conduct while arguing the lack of rehabilitation.

The facts of the instant case reflect a criminal act of violence, but it was not a calculated act. The State's evidence in the form of appellant's confession shows that appellant went unarmed to the deceased's house for the purpose of burglarizing the house. There he found a pistol, which he placed in his coat pocket. He was surprised in the bedroom by the deceased, whom he did not know. When the deceased pulled a gun, yelled at him and threatened to kill him, he shot the deceased. The confession

---

2. It appears the offense was used as the basis of the revocation, but it does not appear that appellant was independently prosecuted for the burglary of a coin-operated machine.

3. The statute prohibits, however, evidence secured in violation of the federal or state constitutions.

reflects appellant was so scared "he was going to shoot us that I didn't know what I was doing . . .. I don't remember shooting him but I was the only one that had a gun." The appellant's story that the deceased pulled a gun is supported by other evidence that the deceased was known to carry a pistol and the fact that his .25 caliber pistol was found at his feet when his body was discovered.

Thus, there was no evidence of past violence, no evidence that violence was initially intended during the burglary and no evidentiary predictions of future violence.

While there may be cases where the evidence offered at the guilt stage of the trial may be sufficient to support an affirmative finding to special issue No. 2 under Article 37.071,[4] we conclude under the circumstances of the instant case that the evidence is insufficient to sustain the jury's affirmative finding as to special issue No. 2—that the appellant would commit criminal acts of violence that would be a continuing threat to society.

The judgment is reversed and the cause is remanded.

ROBERTS, Judge, concurring.

I concur in the result reached by the majority in this case. However, I feel constrained to address the following portion of the majority opinion which states:

"There was no qualified psychiatric testimony as to appellant's psychiatric make-up, which has been held to have probative value as to special issue No. 2 under 37.071, supra; *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976); *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr. App.1977), nor did the State offer other evidence of aggravating factors bearing on this issue such as personal history of violence, that appellant lacked respect for human life, etc."

Ante at 476.

The above quotation, in my opinion, improperly implies that had the State introduced qualified psychiatric testimony as to

the appellant's psychiatric makeup, the evidence would have been sufficient to support an affirmative finding by the jury as to Article 37.071(b)(2). Since there was no evidence of past violence and no evidence that violence was initially intended during the burglary, it is inconceivable that psychiatric testimony concerning the appellant's psychiatric makeup could alone be sufficient to support an affirmative finding as to Article 37.071(b)(2). Therefore, even if the State had introduced qualified psychiatric testimony as to the appellant's psychiatric makeup, the evidence would have been insufficient to support the jury's affirmative finding as to Article 37.071(b)(2).

4. See and cf. *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1976), cert. den. 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977).