FILED IN
COURT OF CRIMINAL APPEALS

January 16, 2015

ABEL ACOSTA, CLERK

AP77,034
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/15/2015 11:00:45 PM
Accepted 1/16/2015 9:10:03 AM
ABEL ACOSTA
CLERK

No. 77,034

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS, AT AUSTIN

## BRANDON DANIEL

Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number D1DC-23-201718
From the 403th District Court of Travis County
The Hon. Brenda Kennedy, Judge Presiding

# Brief on Appeal

Submitted by:

The Law Offices of Ariel Payan
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax:  512/472-4102
arielpayan@hotmail.com

**Ariel Payan**
State Bar No. 00794430

Court-Appointed Attorney for Appellant

**Oral Argument Not Requested**

**Table of Contents**

Certificate of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Point of Error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Facts Relevant to Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## Certificate of Parties

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel, so the members of the court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

### Appellant

Brandon Daniel
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351
TDCJ-ID No. #0999589

| Appellate Counsel: | Trial Counsel: |
|---|---|
| Ariel Payan<br>1012 Rio Grande<br>Austin, Texas 78701 | Russ Hunt Jr.<br>Bradley Urrutia |

### State of Texas

Rosemary Lehmberg
P.O. Box 1748
Austin, TX 78767

| Appellate Counsel: | Trial Counsel: |
|---|---|
| Scott Taliaferro | Gary Cobb<br>William Bishop |

# Index of Authorities

**Federal Cases**:

Daubert v. Merrell Dow, 113 S. Ct. 2786 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25


**Texas Cases**:

Alba v. State, 905 S.W.2d 581, 587 (Tex.Cr.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . .22, 23

Allen v. State, 108 S.W.3d 281, 282 (Tex.Cr.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 18

Anderson v. State, 633 S.W.2d 851, 853 (Tex.Cr.App. [Panel Op.] 1982) . . . . . . . . . . .21

Banda v. State, 890 S.W.2d 42, 57 (Tex.Cr.App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 21

Beltran v. State, 728 S.W.2d 382, 390 (Tex.Cr.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . 14

Beltranv. State,728 S.W.2d382 (Tex.Cr.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Berry v. State, 233 S.W.3d 847, 850-51 (Tex.Cr.App. 2007) . . . . . . . . . . . . . . . . . . . . . . 8

Blue v. State, 125 S.W.3d 491, 497 (Tex.Cr.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Brasfield v. State, 600 S.W.2d 288 (Tex.Cr.App. 1980)(ovr' on other grnds) . . . . . . . . 8, 9

Clark v. State, 717 S.W.2d 910, 917 (Tex.Cr.App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 21

Coble v. State, 330 S.W.3d 253, 281 (Tex.Cr.App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 22

Compton v. Henrie, 364 S.W.2d 179 (Tex.1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Feldman v. State, 71 S.W.3d 738, 744 (Tex.Cr.App. 2002) . . . . . . . . . . . . . . . . . . . . . . . 19

Ford v. State, 305 S.W.3d 530, 533 (Tex.Cr.App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fulenwider v. State,  176 S.W.3d 290, 300 (Tex.App.-Houston [1st Dist.] 2004, no pet.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Garcia v. State, 626 S.W.2d 46 (Tex.Cr.App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . 12

Goss v. State, 826 S.W.2d 162, 168 (Tex.Cr.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . 23

Horne v. State, 607 S.W.2d 556 (Tex.Cr.App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 7

Huffman v. State,746 S.W.2d 212 (Tex.Cr.App. 1988) . . . . . . . . . . . . . . . . . . . . . . . 10

Jackson v. State, 548 S.W .2d 685, 697 (Tex.Cr.App. 1977) . . . . . . . . . . . . . . . . . . . . 18

Keeton v. State, 724 S.W.2d 58 (Tex.Cr.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 14

Keeton v. State,724 S.W.2d 58 (Tex.Cr.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . 11

Kelly v. State, 824 S.W.2d. 568 (Tex.Cr.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . 25

Lankston v. State, 827 S.W.2d 907 (Tex.Cr.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . 25

Marras v. State,74l S.W.2d 395 (Tex.Cr.App. 1987) . . . . . . . . . . . . . . . . . . . . . . . 11

McDonald v. State, 179 S.W.3d 571, 578 (Tex.Cr.App.  2005) . . . . . . . . . . . . . . . . . . . . 26

Morales v. State, 32 S.W.3d 862, 867 (Tex.Cr.App. 2000) . . . . . . . . . . . . . . . . . . . . . . . 26

Nobles v. State, 843 S.W.2d 503, 510 (Tex.Cr.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . 17

Roney v. State, 632 S.W.2d 598 (Tex.Cr.App. 1982) . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Smith v. State, 779 S.W.2d 4l7 (Tex.Cr.App. 1989) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Valle v. State, 109 S.W.3d 500, 503 (Tex.Cr.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . 7

Wallace v. State, 618 S.W.2d 67, 68 (Tex.Cr.App.  1981) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Warren v. State, 562 S.W.2d 474 (Tex.Cr.App. 1978) . . . . . . . . . . . . . . . . . . . . . . . 11, 14

**Texas Statutes / Codes**:

Code Crim. Proc. Art. 37.071, § 2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Code Crim. Proc. Art. 37.071(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex. R. App. P. 44.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tex.Code Crim. Proc. Ann. art. 35.16(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex.Code Crim. Proc. Ann. art. 35.16(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex.r. Evid. 103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tex.R. Evid. 705(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Tex.R.App. P . 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex.R.App. P. 33.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tex.R.Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Tex.R.Evid. 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Other References**:

CHARLES T. MCCORMICK ET AL., MCCORMICK ON EVIDENCE § 203, at 608–09 (3d ed.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

John W. Strong, Language and Logic in Expert Testimony: Limiting Expert Testimony by Restrictions of Function, Reliability, and Form, 71 OR. L.REV. 349, 361 n.81 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

S. Goode, et al., 33 Texas Practice § 705.2 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Preliminary Statement**

Pursuant to Tex.R.App.Pro. 38.1(d), the following is a brief general statement of the nature of the cause or offense:

Appellant, Brandon Daniel, was charged by indictment with the offense of Capital Murder, a felony, in Cause No. 12-201718 in the 403ʳᵈ District Court of Travis County, Texas. He was convicted in said cause and was sentenced to death. Notice of Appeal is automatic and was timely given.

**Point of Error**

Pursuant to Tex.R.App.Pro. 38.1(f), the following are the points upon this appeal is predicated:

**THE EVIDENCE AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S FINDING THAT THERE WAS A PROBABILITY THAT APPELLANT WOULD COMMIT FUTURE ACTS OF VIOLENCE**

**THE TRIAL COURT ERRED IN FAILING TO GRANT A CHALLENGE FOR CAUSE .**

**THE TRIAL JUDGE ERRED IN LIMITING APPELLANT'S RIGHT TO VOIR DIRE AN EXPERT WITNESS REGARDING HER OPINION OUTSIDE THE PRESENCE OF THE JURY.**

**Statement Regarding Oral Argument**

Pursuant to Tex.R.App.Pro. 38.1 (e) and 71, the following is a brief general statement regarding the need for oral argument:

Appellant is not requesting oral argument, unless the Court has questions regarding a particular point of error. Counsel is available for oral argument at the Court's discretion.

No. 77,034

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS, AT AUSTIN

**BRANDON DANIEL**
Appellant

v.

**The State of Texas**
Appellee

On Appeal In Case Number D1DC-23-201718
From the 403th District Court of Travis County
The Hon. Brenda Kennedy, Judge Presiding

# Brief on Appeal

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, BRANDON DANIEL, Appellant in the above styled and numbered cause, by and through Ariel Payan, his undersigned attorney of record, and respectfully files this "Brief on Appeal," filed pursuant to Tex.R.App.Pro. 38.1, 71, and would pursuant to 38.1(g) show the Court as follows:

**Facts Relevant to Appeal**

In the early morning hours of April 6, 2012, Appellant entered the Walmart on I-35 at Parmer.  Appellant began shopping, taking items and placing them into a produce bag.

1

Appellant spoke with an overnight produce stocker and asked him to watch his bag while he ran outside for something. Appellant was very nice and polite to the employee, but appeared to be having a 'rough evening', in that he appeared very disheveled. Vol. 18, pg 21. Appellant then left the store for approximately ten minutes, by which time the stocker left the bag and went on his break. Id. The stocker spoke with his assistant manager, Archie Jordy, and told him about Appellant's appearance. Jordy watched Appellant walk down the aisle with an empty look to his face, he was drifting side to side down the aisle. Vol. 18, pg. 129. Appellant attempted to put something into his bag but missed the backpack which was on his back and the item dropped to the floor. Vol. 18, pg. 13. Appellant continued to do this and leave the items where they lay as he walked down the aisle. Jordy followed him for three to five minutes observing his behavior and notified his manager. Id. Appellant appeared and acted highly intoxicated, so much so that other employees were surprised he was able to walk at all. Vol. 18, pg. 163. The store manager, Lincoln Lemere, called 311 and requested an officer to come assist Appellant who had not attempted to leave the store. Vol. 18, pg. 51. Lemere was notified by another employee that Appellant walked into a well lit flagpole in the parking lot on his way into the store. Vol. 18, pg. 74. Officer Jaime Padron was the first Austin Police Officer to arrive on the scene.

Officer Padron entered the store and after conferring with Lemere approached Appellant. According to Lemere, Officer Padron walked up and identified himself to Appellant who looks at him and then tucks his shoulder down and runs for the store exit.

2

Vol. 18, pg. 82. Appellant takes several steps and then is tackled by the officer, taking him to the ground in front of the McDonald's retailer inside the store. Lemere heres a muffled 'pop' followed by a second louder gunshot. Vol. 18, pg. 83. Lemere follows and grabs Appellant who appears to go limp, as if he passed out, for approximately ten seconds. Vol. 18, pg. 85. Appellant is face down on his right side on the tile with Lemere on top of him. Vol. 18, pg. 86. Appellant's head hits the tile while he is limp, when he revives Appellant lifts his head and laughs then he turns his head and looks at Officer Padron. Vol. 18, pg. 87-88. Walmart employee's and civilian bystanders restrain Appellant and attempt to assist Officer Padron. Other officers arrive and take Appellant into custody.

During trial Appellant presented evidence of his history. Appellant moved to Austin from Colorado back in December 2011, with his girlfriend at the time, Jenna Feland. Vol. 20, pg. 21. Appellant and Jenna broke up and he became depressed and started using Xanax. Vol. 20, pg. 21. Appellant and Jenna had been dating for three and a half years while living in Colorado, and had moved down and into an apartment in Austin together, because of Appellant's new job. Vol. 20, pg. 184-187. Appellant was working for Hewlett-Packard here in Austin as an intermediate software engineer. Vol. 20, pg. 19. Appellant started dating Kristina Nance after the breakup. Vol. 20, pg. 206. Xanax is a central nervous system depressant that causes impairment of gross muscle skills, and is used to treat anxiety, and panic attacks. Vol. 20, pg. 22.

Appellant's blood was seized at the police station and tested. No alcohol was found in his blood. Vol. 20, pg. 89. But the testing chemist did admit that no tests were done to see if he had already absorbed alcohol into his system. Vol. 20, pg. 90. The blood was also tested for drugs and it was found that he had 0.16 mg per liter of Xanax as well as 40 nanograms per ml of THC or marijuana in him. Vol. 20, pg. 93. The marijuana test would only show a broad range of time when the drug was ingested, and would not necessarily indicate that he was under the influence of marijuana at the time of the shooting. Vol. 20, pg. 95. His blood was not tested for methamphetamine. Vol. 20, pg. 96. The blood was taken at 9 a.m., seven hours after the Walmart shooting. Vol. 20, pg. 103.

The defense called Dr. Matthew Masters to discuss the Xanax in Appellant's blood. Vol. 21, pg. 4. Xanax is a benzodiazepine which is a sedative hypnotic. Vol. 21, pg. 10. This type of drug can induce memory loss, starting from when the drug is taken. Vol. 21, pg. 15. Additionally a person on Xanax may say or do things they normally would not, due to the frontal lobe disinhibition it causes. Vol. 21, pg. 17. Dr. Masters testified that a therapeutic dose of xanax is between 7 and 40 nanograms per ml. Vol. 21, pg. 20. Appellant's blood was toxic with xanax at 160 nanograms per ml. Evidence was presented that Appellant had attempted to or had purchased 8-10 bars of xanax, Dr. Masters testified that the blood results were consistent with Appellant ingesting that amount at once. Vol. 21, pg. 21. This amount of the drug would put a normal person to sleep. Id. Dr. Masters testified that a person under this much of the drug would confabulate memories to make up

4

for gaps, which would resemble dementia. Vol. 21, pg. 23. Dr. Masters expert opinion was that Appellant was intoxicated when he waived his rights and gave a statement to the police. Vol. 21, pg. 24. During a search of Appellant's apartment, a series of sticky notes were seized from around Appellant's computer. Dr. Masters noted that a couple of these notes indicated to him that Appellant was trying to self regulate his ingestion of the drugs, and a recognition of an addiction to the drugs. Vol. 21, pg. 25-7. Dr. Masters diagnosed Appellant as suffering from depression and social anxiety disorder. Vol. 21, pg. 35. Dr. Masters also stated over 100 nanograms of xanax in the blood is clinically shown to cause memory impairment issues. Vol. 21, pg. 36. Further, because Appellant is of Asian descent his body would be 25% more likely to not metabolize the xanax as efficiently as an Anglo. Vol. 21, pg. 37. Dr. Masters stated that due to the amount of xanax found to be in his blood, he was clinically certain that Appellant was suffering a black out at the time. Vol. 21, pg. 37

Appellant was found guilty and the jury was presented the special issues. The jury found that Appellant was a future danger and there was no mitigating evidence to support a life sentence. Appellant was sentenced to death.

Appellant's first defense attorney withdrew, and another was appointed prior for trial. Multiple motions were filed by first counsel, and trial counsel had the trial judge rule on some but not all. Specifically, a motion was filed by first counsel to suppress Appellant's statement given to police, which was never ruled upon. No evidentiary hearings were held pre-trial. Defense counsel used fourteen of its fifteen peremptory strikes. The defense

objected three times to the State's challenges for cause. During the guilt innocence portion of the trial, defense counsel made four objections, two of which were later withdrawn, and none of which received an adverse ruling from the trial judge. At punishment, the defense objected seven times. This appeal follows.

## Summary of the Argument

Pursuant to Tex.R.App.Pro. 38.1(h), the following is a brief summary of the argument presented in this appeal:

The evidence presented by the state failed to meet the burden of proof necessary to find that Appellant would be a future danger. Appellant did not meet the Keaton requirements to substantiate the jury's finding to the first special issue.

The trial judge erred in failing to grant a challenge for cause, for a veniremember who had an established bias in favor of a death sentence, and who would require the defense to present mitigating evidence, and thereby illegally shift the burden of proof to the defense.

The trial judge erred in limiting Appellant's voir dire of the state's expert psychologist's at punishment.

**THE EVIDENCE AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S FINDING THAT THERE WAS A PROBABILITY THAT APPELLANT WOULD COMMIT FUTURE ACTS OF VIOLENCE**

Reviewing courts are bound by the law to make certain that the death sentence is not "wantonly or freakishly" imposed, and that the purposes of Code of Criminal Procedure Art. 37.071(b), are accomplished. Horne v. State, 607 S.W.2d 556 (Tex.Cr.App. 1980); Keeton v. State, 724 S.W.2d 58 (Tex.Cr.App. 1987). Although this Court has held that the facts of a particular crime and the circumstances surrounding it can support a finding of future dangerousness, it does not follow that the underlying facts alone in all cases will provide such support. See, e.g., Valle v. State, 109 S.W.3d 500, 503 (Tex.Cr.App. 2003).

In Wallace v. State, the defendant was found guilty of capital murder in the course of a robbery and sentenced to death. Wallace v. State, 618 S.W.2d 67, 68 (Tex.Cr.App. 1981). The State's only evidence regarding whether the defendant would commit future violent acts was the defendant's own admission on cross-examination that he had attempted a robbery a few weeks before the murder, and that the defendant had a military violation for being absent without leave. Id. at 68-69. According to the this Court, "[t]here was no other evidence presented that could be considered relevant to the issue of future violent conduct. Specifically, there was no evidence of prior convictions, no prior acts of violence, no character evidence, no psychiatric evidence." Id. at 69. The Court found the evidence of

7

future violent conduct to be legally insufficient, and reformed the defendant's punishment to life imprisonment. Id.

Similarly, in Berry v. State, the defendant was found guilty of murdering her infant son and sentenced to death. Berry v. State, 233 S.W.3d 847, 850-51 (Tex.Cr.App. 2007). Evidence at punishment showed that Berry had abandoned one of her other children as well. Id. at 861. The State argued that because there was a possibility, albeit a slim one, that she could become pregnant in prison, she posed a danger to any hypothetical future children. Id. at 862, 864. The Court held that the evidence indicated that the defendant had only ever been dangerous to two of her children, and had not "harmed or attempted to harm any of her other children, an unrelated child, or any other person." Id. at 864. Because there was a very low probability she would have any more children, the Court found it unlikely that she would be a future danger, and reformed her sentence to one of life imprisonment. Id.

In Brasfield v. State, 600 S.W.2d 288 (Tex.Cr.App. 1980)(ovr' on other grnds), the Court stated that the jury may consider many factors when determining whether the defendant would be a continuing threat of violence to society. Those non-exclusive factors include, but are not limited to the following:

1. The circumstances of the capital offense, including the defendant's state of mind and whether he or she was working alone or with other parties;

2. The calculated nature of the acts;

3. The forethought and deliberateness exhibited by the carrying out of the offense;

8

4. The existence of a prior criminal record, and the severity of the prior crimes;

5. The defendant's age and personal circumstances at the time of the offense;

6. Whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

7. Psychiatric evidence;

8. Character evidence, e.g., Whether the State presented any "bad" reputation evidence against the defendant.

See, Keeton, 724 S.W. 2d at 61. This Court held that the evidence was insufficient to support the jury's affirmative answer to the second special issue because of the following: the State did not present any evidence at the punishment stage of the trial; the evidence at the guilt stage was circumstantial; the State did not present any psychiatric evidence at the punishment stage of the trial; the State did not present any evidence of prior criminal convictions by the defendant; nor did the State present any "bad" character or reputation evidence. See, Brasfield v. State, 600 S.W.2d at 294.

In Roney v. State, 632 S.W.2d 598 (Tex.Cr.App. 1982), this Court reformed the defendant's sentence from death to life imprisonment. In finding that the facts of the case did not support the jury's affirmative finding to the second special issue, regarding whether the defendant would be a continuing threat to society, this Court made the following observations:

Although this was a senseless murder, that fact is true of every murder in the course of a robbery. The facts of this offense, standing alone, do not carry the marks of a calculated and cold blooded crime, such as appeared in O'Bryan

9

v. State, 591 S.W.2d 464,480 [Tex.Cr.App. 1979], where the defendant for months planned the candy poisoning of his own child to collect life insurance. To support a yes answer to the second punishment issue, the evidence must show beyond a reasonable doubt that there is a probability appellant would commit criminal acts of violence that would constitute a continuing threat to society. To hold that the facts of this offense, standing alone, would support such a verdict, would mean that virtually every murder in the course of a robbery would warrant the death penalty. Such a construction would destroy the purpose of the punishment stage in capital murder, which is to provide a reasonable and controlled decision on whether the death penalty should be imposed, and to guard against its capricious and arbitrary imposition.

Roney, 632 S.W.2d at 603.

In Beltran v. State, 728 S.W.2d 382 (Tex.Cr.App. 1987), the evidence showed that the defendant, entered a store armed with a pistol after which he shot and killed the store owner's wife as she was attempting to give the defendant money from the cash register. The State additionally presented evidence that the defendant had a "bad" reputation, had prior alcohol related offenses, and also had an unadjudicated offense of assault upon a peace officer. Nevertheless, this Court held that the evidence was insufficient to sustain the jury's affirmative answer to the second special issue.

In Huffman v. State, 746 S.W.2d 212 (Tex.Cr.App. 1988), this Court held that the evidence was insufficient to support the jury's affirmative finding to the second special issue. In so holding, the Court stressed that there was no showing that the robbery was long in planning or that any act of violence was originally intended. Furthermore, there was evidence that the defendant was highly intoxicated when the murder was committed. The defendant

10

also did not have any past record of any criminal acts of violence except for attacking a jail guard 27 hours after his arrest.

In Keeton v. State,724 S.W.2d 58 (Tex.Cr.App. 1987), this Court held that the jury's finding that the defendant would commit acts of violence which would constitute a continuing threat to society was not sufficiently supported by evidence. This was the holding that was reached in spite of the following: the murder occurred in the course of the commission of a robbery; the offense was unprovoked and cold-blooded; and that the defendant, without any warning or provocation, shot the cashier before he even announced his demand for money. However, there was no "bad" psychiatric evidence; no "bad" character or reputation evidence; and no "bad" evidence showing that defendant had committed violent acts in the past.

In Warren v. State, 562 S.W.2d 474 (Tex.Cr.App. 1978), the Court stated that the evidence was insufficient to sustain the jury's affirmative finding to the second special issue. The Court stated that the case reflected a "criminal act of violence, but not a calculated act." The evidence showed that Warren went unarmed to the victim's house for the purpose of burglarizing it. Once inside he found a pistol and after being surprised by the deceased, shot and killed the deceased.

In Marras v. State,74l S.W.2d 395 (Tex.Cr.App. 1987) the Court held the evidence to be insufficient to sustain the affirmative answer to special issue number two for two main reasons: no prior criminal convictions that could be considered under the submitted charge and the defendant made no attempt to shoot at his civilian or police pursuers after the shooting

11

in question. In Marras the defendant shot and killed his victim while defendant was cruising the bar scene in Houston, armed with a handgun, with the express purpose of "rolling drunks." Two police officers testified that Marras's reputation was bad, another officer testified that he was a peaceable and trusted inmate.

In Garcia v. State, 626 S.W.2d 46 (Tex.Cr.App. 1982), the defendant was convicted of murdering a Mexican national who had illegally crossed the border with two hundred dollars in his pocket. At first, the defendant agreed to give the victim a ride to a taxi stand, but instead robbed and murdered him. This Court, holding the evidence to be insufficient to sustain the jury's affirmative finding to the special issue number two, stated: "This was not the case where the robbery feature of the offense was long in the planning stage or a case where an armed individual drives around searching for an ideal situation for a robbery, intending to use violence if necessary."

In Smith v. State, 779 S.W.2d 4l7 (Tex.Cr.App. 1989), the facts established that the defendant tied his victim to a bedpost with pantyhose and sexually assaulted her. The victim was then untied and stabbed fourteen times in the chest and back, including once through the heart. A forensic pathologist testified it was a brutal death but not "extremely" brutal, characterizing it as "a very typical sex murder." In holding that the facts of the offense alone were insufficient to support an affirmative answer to the second special issue, this Court stated:

From this we gather that in the mind of the State's own expert the offense for which appellant was convicted was not shocking or otherwise extraordinary even with respect to the multiple stabbing. We cannot conclude the circumstances of the offense are so heinous or evince an "aberration of character" so peculiarly dangerous as alone to justify an affirmative response to the second special issue. It has been said that section 19.03 of the Penal Code 'limits the circumstances under which the state may seek the death penalty to a small group of narrowly-defined and particularly brutal offenses. To hold the offense itself in this case was sufficient to prove future dangerousness would threaten to undermine the function of Article 37.071 ..."

Id at 419-420. (citations omitted).

In the instant case, applying the Keaton criteria of future dangerousness review shows that Appellant is not a future danger. Appellant was highly intoxicated on xanax. The evidence is uncontroverted that the amount of xanax he injested was toxic, and that he was experiencing black outs and memory issues due to the nature and amount of drugs in his system. RR Vol. 21, pg. 21. Although he had his gun from home on him, the state did not present any evidence showing whether or not Appellant chose to take the gun before or after the xanax took effect, therefore, the evidence is inconclusive as to the calculated nature of his actions. Appellant's actions in the store, picking up items and dropping them on his backpack on his back, staggering drunkenly throughout the store, as well as when he is outside about to reenter the store, walking into two metal posts, and the side of the building, (as evidenced in the video State's exhibit 4), do not evidence forethought or deliberateness in the crime for which he was convicted.[1] He was seemingly unaware of anyone else in the

---

[1] Appellant was in the store for close to half an hour. He entered and began shopping, collecting items into a small plastic bag from the produce area. Appellant then put the bag down and walked to the

13

store and was making a spectacle of himself in his intoxicated stupor. The state presented evidence that Appellant had some prior criminal history, mostly dealing with intoxicating substances. But none of this evidence was of a violent or destructive (other than to himself) nature. See also Beltran v. State, 728 S.W.2d 382, 390 (Tex.Cr.App. 1987) (defendant's multiple convictions for drunk driving were not criminal acts of violence and thus did not support a finding of future dangerousness); Keeton v. State, 724 S.W.2d 58, 60-61, 64 (Tex.Cr.App. 1987) (prior conviction for possession of marijuana and uncooperativeness during probation were not sufficient for a finding of future dangerousness); *Wallace*, 618 S.W. 2d at 68-69; Warren v. State, 562 S.W.2d 474, 477 (Tex.Cr.App. 1981) (a prior felony theft conviction was insufficient to sustain a finding of future dangerousness).

The fifth factor deals with the defendant's age and personal circumstances at the time of the offense. Appellant is a young man, 25 years of age at the time of the offense. Highly intelligent and working at Hewlett-Packard as a programer. RR Vol. 20, pg. 19. He had recently broken up with his girlfriend, something he regretted and ended up with another woman who fueled his drug addiction. Appellant suffered from depression from the age of 11 and it escalated by age 13. RR Vol. 24, pg. 92. This led Appellant to be an introvert and

---

exit of the store. The video shows him walking up to the sliding glass doors, and as he approached the doors opened, as they did he walked off to the left following the door as it recessed and becoming confused as to where the exit went. Once he exited the store he walked into a metal box, then lamp post, and then almost walking into the side of the building. He reentered the store, could not find his groceries and began all over again picking stuff up and dropping it. If his intention was to shoplift, he lacked any forethought in its execution, because of his intoxicated state, he was highly visible and was followed almost the entire time while in the store.

caused difficulty in meeting people and making friends. Id. Appellant suffered multiple head injuries as a young child, and does not have many childhood memories as a result. RR Vol. 24, pg. 242. Appellant suffered a head injury at age 15, due to a skateboarding accident, and was unconscious and suffered from amnesia for an extended period of time. RR Vol. 24, pg. 244 and 269. Appellant was unable to complete high school due to his social issues, and ended up getting a GED, and went on to Colorado State University. RR Vol. 24, pg. 99. He discovered he was good at math and computer sciences, and ended up getting a good job out of collage. Both the defense expert at trial and the jail M.D. diagnosed Appellant with 'major depression'. RR Vol. 23, pg. 99; RR Vol. 24, pg. 109-110.

The state and defense both presented psychiatric evidence, although neither side did any psychopathy testing. The defense experts testified about a young man with developmental problems both physical and drug induced. Both Dr. Lee Carter and Dr. Thomas Harrell, psychologists, testified about Appellant's condition at the time of the murder. They both discussed his depression and polysubstance abuse issues. Harrell specializes in neuropsychology and rehabilitation psychology. RR Vol. 24, pg. 222. The expert was particularly interested in the connection between Appellant's head injuries and the onset of his substance abuse. Harrell testified that he administered one test on Appellant that indicated that he was suffering from frontal lobe injury, which correlates with behavioral disinhibition, poor self control and mood instabilities. RR Vol. 24, pg. 246. Harrell testified that Appellant's actions in the murder were a combination of the xanax, his upbringing, the

15

alcoholism and drug addiction of his parents, his traumatic brain injury to his frontal lobe, and his long history of impulse control led him to that moment. RR Vol. 25, pg. 89. The defense also called Harold Scott, M.D. specializing in psychiatry. RR Vol. 25, pg. 135. He discussed Appellant's suicide attempt while in custody in this case.

The State called Melissa Mauro, a clinician with a doctor of psychology or Psy-D, who reviewed records and spoke to Appellant. RR Vol. 26, pg. 12-13. Dr. Mauro testified that she did not agree with the jail physicians' diagnosis of major depression. RR Vol. 26, pg. 17. She also believed that Appellant had adjusted well to a jail setting, and was socializing with other inmates. RR Vol. 26, pg. 25-6. Dr. Mauro stated that she believed his multiple suicide attempts both as a young man, as an adult prior to his arrest, and again in jail awaiting trial were gesture's, and not serious. RR Vol. 26, pg. 24. Dr. Mauro testified later that it is very uncommon for children age 11 to attempt to commit suicide. RR Vol. 26, pg. 54. Appellant informed her that he was using drugs on a daily basis, and self admitted to using a wide range of different narcotics. RR Vol. 26, pg. 28. Dr. Mauro testified that Appellant did not have any drug withdraw symptoms while in jail. RR Vol. 26, pg. 30. Mauro went on to state that she did not believe that he was depressed at any time. RR Vol. 26, pg. 30-1.

Dr. Mauro went into detail about Appellant's adjustment to incarceration. She testified that he was adjusting very well, wanting to socialize with other inmates, not being fearful of them, and identifying them as friends. RR Vol. 26, pg. 35. In effect trying to fit in and

16

succeeding in integrating into prison society. All of which is not indicative of future dangerousness in that society.

It must be remembered that the future danger instruction does not contemplate one act of violence in the future, but numerous acts such that a defendant would constitute a continuing threat of violence no matter where he or she is. This requirement of multiple acts over a continuing period of time ensures that the death penalty is reserved for those few incorrigibles that pose such a great threat to society that they cannot be incarcerated without fear of further violent outbursts toward others. Nobles v. State, 843 S.W.2d 503, 510 (Tex.Cr.App. 1992). Appellant does not meet this requirement. There is no history of violence, there is copious evidence of self abuse, depression of some kind, and excessive alcohol and drug abuse. The state went to extreme lengths to present opinion from several witnesses that drugs and alcohol are rampant in the prison system to try and show that Appellant would continue to have access to mind altering substances. This argument is descriptive of one of the key elements that led to this offense, and the key element of Appellant's dangerousness, access to drugs. But as has been shown by Dr. Masters as well as Dr. Carter and Dr. Scott, this addiction is not just the simple use of drugs, but the excessive and continuous use. Prison is not a drug store, Appellant will not have access to those things that made him so dangerous in this case. Like Berry, Beltran, and Huffman the evidence presented by the State fails to reach an objective minimum of proof of future dangerousness,

17

and therefore Appellant respectfully requests that this Court reform his sentence to life without the possibility of parole.

**THE TRIAL COURT ERRED IN FAILING TO GRANT A CHALLENGE FOR CAUSE .**

As a prerequisite for presenting an error for appellate review, the record must show that the error was preserved. Tex.R.App. P . 33.1. Article 35.16 of the Code of Criminal Procedure lists the specific grounds on which a potential juror may be challenged for cause. Tex.Code Crim. Proc. Ann. art. 35.16(c)(2). When a venire person is subject to challenge under article 35.16, the failure to assert a challenge for cause during voir dire waives any ground of error on appeal. Jackson v. State, 548 S.W .2d 685, 697 (Tex.Cr.App. 1977). To preserve error with respect to a trial court's denial of a challenge for cause, an defendant must: (1) assert a clear and specific challenge for cause; (2) use a peremptory strike on the complained-of veniremember; (3) exhaust his peremptory strikes; (4) request additional peremptory strikes; (5) identify an objectionable juror; and (6) claim that he would have struck the objectionable juror with a peremptory strike if he had had a strike to use. Allen v. State, 108 S.W.3d 281, 282 (Tex.Cr.App. 2003); Fulenwider v. State, 176 S.W.3d 290, 300 (Tex.App.-Houston [1st Dist.] 2004, no pet.). The defense in this case did not utilize all of

its peremptory challenges, but would have requested additional challenges had the situation arose. See Vol. 16, pg. 134.

A court of appeals should review a ruling on a challenge for cause with "considerable deference" because the trial court is in the best position to evaluate the veniremember's demeanor and responses. Blue v. State, 125 S.W.3d 491, 497 (Tex.Cr.App. 2003). A reversal is mandated if a trial court's ruling on a challenge for cause is a "clear abuse of discretion." Id.

A potential juror is subject to a challenge for cause when they state they have a bias for or against one of the parties. The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law." Feldman v. State, 71 S.W.3d 738, 744 (Tex.Cr.App. 2002). Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views." Id. The proponent of the challenge has the burden of establishing that the challenge is proper. Id. at 747. "The proponent does not meet his burden until he has shown that the venireman understood the requirement of the law and could not overcome his prejudice well enough to follow it." Id.

In the instant case, Veniremember number 11, Marcus Reading, was challenged by the defense on the basis of a bias in favor of the death penalty as well as his need for the defense

to present evidence to overcome said bias in the form of mitigation evidence. Vol. 11, pg. 205. Under questioning by the defense the veniremember stated:

A. Somebody who -- who kills a police officer, I mean, that's a pretty serious offense.

Q. Of course, it is.

A. If somebody knowingly or fairly -- well, knowingly did that, then that's pretty -- it'd be hard for me not to vote for the death penalty on that.

Vol. 11, pg. 193. After further questioning the veniremember went on to state:

A. I fall more toward death penalty being fairly appropriate anytime a murder is committed knowingly and intentionally.

Vol. 11, pg. 197-198.

The veniremember clearly stated that he would be difficult for him not to vote for death when an individual was found to have committed the murder of a police officer knowingly. Additionally, he would be leaning towards a death sentence even in a straight murder situation, thereby lowering the State's burden of proof even more. This also shifts the burden onto the defense to prove mitigation to counter act this juror's bias. The automatic determination of a special issue renders a veniremember challengeable for cause. Tex. Code Crim. Proc. Art. 37.071, § 2(c), requires the State to prove the elements of the special issue beyond a reasonable doubt. Therefore, any venireman who would automatically answer those special issues in the affirmative, or who would place the burden of proof on the defense, is challengeable for cause under Article 35.16(c)(2) for having a bias or prejudice against a law

20

applicable to the case upon which the defense is entitled to rely. Banda v. State, 890 S.W.2d 42, 57 (Tex.Cr.App. 1994), cert. denied, 515 U.S. 1105 (1995).

"Bias" has been defined as "an inclination toward one side of an issue rather than to the other ... [which] leads to the natural inference that [a juror] will not or did not act with impartiality." Anderson v. State, 633 S.W.2d 851, 853 (Tex.Cr.App. [Panel Op.] 1982) (citing Compton v. Henrie, 364 S.W.2d 179 (Tex.1963)). An appellant must show that the juror was biased to the extent that he or she was incapable of being fair. See id. A juror who indicates this type of bias as a matter of law must be excused despite any protestations by the juror of an ability to set the bias aside and be fair and impartial. See Clark v. State, 717 S.W.2d 910, 917 (Tex.Cr.App. 1986). Veniremember Reading admitted that he had a bias or leaning towards death in a case involving the death of a police officer, and thereby lowered the state's burden of proof on that issue.

Appellant respectfully requests that this Court reverse and remand this case for a new trial.

**THE TRIAL JUDGE ERRED IN LIMITING APPELLANT'S RIGHT TO VOIR DIRE AN EXPERT WITNESS REGARDING HER OPINION OUTSIDE THE PRESENCE OF THE JURY.**

There are essentially three kinds of pre-testimony hearings a litigant can conduct with an expert witness to challenge the admission of their testimony. A qualifications hearing under Tex.R.Evid. 702, to determine what experience or training a witness has to qualify as an expert witness on a particular subject; a Rule 705 (b) hearing to determine the underlying facts or data upon which an opinion is based; or a Daubert hearing whereby a litigant challenges the scientific theory or methodology underlying the experts chosen field of study. Generally, all such hearings, upon timely request, are mandatory because the courts recognize the weight jurors can give to scientific evidence, that goes above and beyond that given to lay witnesses. See, Coble v. State, 330 S.W.3d 253, 281 (Tex.Cr.App. 2010); Tex.R.Evid. 705.[2]

Under Rule 705(b), a criminal defendant is entitled, upon a timely request, to conduct a voir dire examination directed to the underlying facts or data upon which the opinion of an expert witness is based. Id.; Alba v. State, 905 S.W.2d 581, 587 (Tex.Cr.App. 1995). The rule indicates that the trial court must allow this examination to be conducted outside the hearing of the jury and prior to the expert testifying to her opinion before the jury. Id., at 587–88. The purpose of Rule 705(b) is to give defense counsel the "opportunity to determine

---

[2] See CHARLES T. MCCORMICK ET AL., MCCORMICK ON EVIDENCE § 203, at 608–09 (3d ed.1984); John W. Strong, Language and Logic in Expert Testimony: Limiting Expert Testimony by Restrictions of Function, Reliability, and Form, 71 OR. L.REV. 349, 361 n.81 (1992) ("There is virtual unanimity among courts and commentators that evidence perceived by jurors to be 'scientific' in nature will have particularly persuasive effect")

the foundation of the expert's opinion without fear of eliciting damaging hearsay or other inadmissible evidence in the jury's presence." Alba, 905 S.W.2d at 588 (citing Goss v. State, 826 S.W.2d 162, 168 (Tex.Cr.App. 1992)). The voir dire hearing may also allow the defendant to develop an objection that the expert's testimony lacks a sufficient basis for admissibility. Id.; see Tex.R. Evid. 705(c) (opinion is inadmissible if trial court determines underlying facts or data do not provide sufficient basis for opinion under Rule 702 or 703). Because Rule 705(b) is mandatory in a criminal case, the trial court errs if it denies a defendant's timely and proper request for a Rule 705(b) hearing. Alba, 905 S.W.2d at 588. Affording a defendant the chance to voir dire the State's expert witnesses gives defense counsel the opportunity to determine the foundation of the expert's opinion without fear of eliciting damaging hearsay or other inadmissible evidence in the jury's presence. S. Goode, et al., 33 Texas Practice § 705.2 (1988). A Rule 705(b) hearing may also supply defense counsel with sufficient ammunition to make a timely objection to the expert's testimony on the ground that it lacks a sufficient basis for admissibility. Id. Because of the mandatory nature of Rule 705(b), a trial judge's denial of a timely and proper motion for such hearing would constitute error. In such a case, a reviewing court would then be required to decide whether the trial judge's error was so harmful as to require a reversal.

In the instant case, defense counsel requested to voir dire a state's expert, Marisa Mauro, a psychologist on her qualifications. RR. Vol. 26, pg. 8. The state presented Mauro's educational background and asked her why she was testifying in the case. To which she

23

replied that she was there to "discuss [her] findings related to [Appellant]", based upon an evaluation of him and a review of the records (unspecified). RR Vol. 26, pg. 8.

The defense began their voir dire of the witnesses when the trial judge interjected, the following occurred:

DEFENSE: Can you summarize your findings that you intend to testify for us today?

COURT: I thought the voir dire was on qualifications.

DEFENSE: It is, but it's possible we may move to suppress some of her findings, *depending on what they are*. So we would like --

COURT: But the fact that she is allowed to testify as to her findings is based on her qualifications, so we don't need to take that part outside the presence of the jury and delay it further.

DEFENSE: I think *we have the right to question whether there is a scientific basis to her findings prior to her testifying about those findings*.

COURT: Well, I guess you can -- you can definitely testify {sic} as to what she has based her findings on as far as her expertise as part of her qualifications, but just to have a second hearing as to what they are and then repeat it once the jury comes in, I don't think you do have a right to do that. You can certainly ask her on what basis she based her findings without going into what they are, because the request for the voir dire was as to her qualifications, because she has not testified as to any conclusions as of yet.

RR Vol. 26, pg. 9-10. [Emphasis added]. Defense counsel was unaware of the witnesses opinion or the nature of her examination of Appellant. Although a hearing had been held regarding a possible Lagrone motion, RR Vol. 16 (pg. 136-142) and 17 (pg 2-11), and a subsequent limitation and agreement of what the state's witness would be allowed to

24

examine Appellant on, the defense remained unaware of what the witness' actual opinion and its basis. Appellant has a right to voir dire the witness on qualifications, as he requested. He also had the right to challenge the scientific basis of her findings prior to her testifying. See, Daubert v. Merrell Dow, 113 S. Ct. 2786 (1993); Kelly v. State, 824 S.W.2d. 568 (Tex.Cr.App. 1992).

Generally, if a party fails to preserve an issue for appeal, this Court should not address the merits of that issue. Ford v. State, 305 S.W.3d 530, 533 (Tex.Cr.App. 2009). To properly preserve an issue for appellate review, the record must show that (1) the defendant timely presented the complaint to the trial court and (2) the trial court either ruled or refused to rule on the complaint. See Tex.R.App. P. 33.1(a)(1). The complaint must be sufficiently clear so as to provide the trial court and opposing counsel an opportunity to address the issue. Ford, 305 S.W.3d at 533 (citing Lankston v. State, 827 S.W.2d 907 (Tex.Cr.App. 1992)). "However, a party need not spout 'magic words' or recite a specific statute to make a valid objection," and a complaint is not defective merely because it does not cite a specific rule. Id. Here the defense initially requested a qualification voir dire, but then informed the trial judge that they wanted to challenge her findings and any scientific basis thereof. The trial judge's order limiting the defense' inquiry into the expert's findings and subsequent basis was error.

Because the error is not constitutional, this Court should only reverse if it affected Appellant's substantial rights; otherwise, the error must be disregarded. Tex. R. App. P.

25

44.2(b); Tex.r. Evid. 103(a).  In making this determination, the Court should consider the entire record to decide whether the error had a substantial or injurious effect.  Morales v. State, 32 S.W.3d 862, 867 (Tex.Cr.App. 2000). Where the reviewing court has fair assurance that the error did not influence the jury or had but a slight effect, the conviction will stand. Id.; McDonald v. State, 179 S.W.3d 571, 578 (Tex.Cr.App.  2005).

Appellant would respectfully request that this Court find that the denial of Appellant's right to fully voir dire the expert as to her opinion and its basis was error, and that such error was not harmless, and reverse this case for a new punishment hearing.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, BRANDON DANIEL, Appellant in the above styled and numbered cause respectfully prays that this Court grant him any and all relief to which he is entitled.

Respectfully submitted,

**ARIEL PAYAN**
Attorney at Law
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax: 512/472-4102
Arielpayan@hotmail.com

by:   /s/ Ariel Payan
**Ariel Payan**
State Bar No. 00794430

Attorney for Appellant

**Statement Regarding Oral Argument**

Oral Argument is not Requested

**Certificate of Compliance**

I hereby certify pursuant to T.R.A.P. 9.4(i)(3), the word count for this document, as determined by the word processing program is    6876              .

/s/ Ariel Payan
**Ariel Payan**

27

**Certificate of Delivery**

This is to certify that a true and correct copy of the above and foregoing "Appellant's Brief on Appeal" was hand-delivered, mailed postage pre-paid or transmitted via electronic service to the  office of the District Attorney of Travis County, Texas; and to Appellant at the address listed in the Certificate of Parties, on January 15, 2015.

_____/s/ Ariel Payan_____

**Ariel Payan**